24 C.C.P.A.(Patents)

### In re GAUERKE.

### Patent Appeal No. 3674.

Court of Customs and Patent Appeals.
Nov. 30, 1936.

Ralph F. Miller, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting all of the claims, numbered 1 to 14, inclusive, of appellant's application; the ground of rejection was the lack of patentability of the claims over the cited prior art.

Nine of the claims are product claims, the remainder being process claims. Claims 1 and 7 are illustrative of the claims and read as follows:

"1. An oil modified polyhydric alcohol-polybasic acid resin comprising a polyhydric alcohol ester of an organic polybasic acid and sunflower seed oil acids."

"7. A process which comprises heating a polyhydric alcohol, an organic polybasic acid and sunflower seed oil acids until resinification takes place."

The references cited are:

"Arsem, 1,098,776, June 2, 1914.

"Weber, 1,690,515, November 6, 1928.

"Kienle, 1,893,873, January 10, 1933.

"Kienle et al., 'Alkyd Resins as Film-Forming Materials,' Journal of Industrial and Engineering Chemistry, April, 1929, pp. 349-352."

Appellant's claimed invention is concisely described by his counsel in the brief as follows: "The invention, which relates to improvements in a known type of synthetic resin, is effected by chemically modifying such resin with a specific vegetable or fatty oil instead of the fatty oils heretofore used as modifying agents for this type of resin. * * *"

As will be observed from the claims, the specific vegetable oil involved is sunflower seed oil.

The reference Arsem relates to resinous condensation products and process of making the same. It discloses the formation of resins from polyhydric alcohol and polybasic acid. As modifying ingredients there are disclosed, among others, stearic, palmitic, oleic acids, and mixtures of acids.

The reference Weber relates to a composition of matter containing a cellulose derivative. It discloses resins prepared from drying or semi-drying oils and their fatty acids, an organic acid other than the fatty acids from oils, and a polyhydric alcohol. Among the oils mentioned are soya bean, linseed, cocoanut, China wood, rapeseed, and corn.

The patent to Kienle relates to resinous condensation products and process of making them. It relates to resins of the polyhydric alcohol and polybasic acid type, and involves the use of an acid derived from a drying oil. Mentioned are China wood, linseed, or perilla oils. and oleostearic, linolic, or linolenic acids.

The article by Kienle et al. relates to alkyd resins which "include all those complexes resulting primarily from the interreaction of a polyhydric alcohol and polybasic acid." The article discloses that oxygen-convertible resins " * * * are prepared by replacing part of the polybasic acid with the necessary amount of an oxidizable, unsaturated, fatty acid or acids—for example, linoleic, linolenic, oleostearic acid, or, what is more economical, with the mixed fatty acids of *any one of the drying oils*." (Italics ours.)

The examiner, in rejecting the claims, held that the prior art showed the use of various specified drying oils, other than sunflower seed oil. With regard to the claimed superiority of appellant's product, that it has greater resistance to "after yellowing," the examiner held that differences were to be expected between the product resulting from the use of any one oil of the class shown in the prior art and the product resulting from the use of any other of such oils. He finally held that the use of a class of oils for the purpose was shown by the prior art, that appellant had merely used an oil of the same class, and that what he had done did not constitute invention.

Prior to consideration of the matter by the Board of Appeals, appellant filed, under rule 76 of the Patent Office, an affidavit by one James K. Hunt, being in effect a challenge of some of the statements made by the examiner. The case was

remanded to the examiner, who held that said affidavit did not "have any particular pertinence to the rejection * * *." After limiting one statement in his former decision, not important here, the examiner concluded with the following: "The other averments may be conceded without altering the grounds of rejection previously given."

Upon appeal, the Board of Appeals affirmed the holding of the examiner, upon the grounds given by him, concluding as follows: "Sunflower seed oil and its properties are well known. We are persuaded that it did not require the exercise of the inventive faculty, in view of the teachings of the prior art references, to select this particular drying oil as a modifying agent of an alkyd resin. We are not satisfied that the alleged new result is anything more than a change in degree."

In appellant's brief, under the heading "The Issue," we find the following:

"* * * For the present purpose the statement of facts simply need be that the vegetable oils have been used in modifying the properties of the resins, and that the drying oils have been used when an air drying resin is wanted, and that appellant's invention consists in using a specific vegetable oil, sunflower seed oil, in making such resins whereby he obtains:

"1. *Resins which are substantially free from after-yellowing, and;*

"2. *Resins which are at the same time fast drying.*"

The patent to Weber states: "In the present invention resins prepared from *drying or semi-drying oils,* such as, castor oil, linseed oil, or their fatty acids, an organic acid, such as, phthalic anhydride, and glycerol, glycol, or other appropriate alcohol, toughened by means of a cellulose ester or ether, are superior in that compositions so prepared are less susceptible to outside influences, such as moisture, light, etc., particularly where such composition is to be used for the preparation of lacquers or lacquer enamels, which would be subject to exposure to the weather. * * *" (Italics ours.)

Examples are given of the use of China wood oil, soya bean oil, corn oil, and rapeseed oil.

The patent to Kienle states: "I have discovered that when an aromatic or cyclic polybasic acid, such as phthalic acid, is associated with an unsaturated, oxidizable acid, namely an acid derived from a *drying oil,* such, for example, as eleostearic, linolic, or linolenic acid, such acids having more than one double bond in the molecule, that then a new form of resinous material is produced which differs in many important respects from the resin containing a non-drying fatty acid. * * *" (Italics ours.)

Claim 38 of this patent reads as follows: "38. A resinous product which on saponification yields a polyhydric alcohol, a polybasic organic acid, and a drying oil acid."

The Kienle et al. publication states, as hereinbefore quoted, that the fatty acids of any one of the drying oils may be used in oxygen convertible resins.

It is clear from the foregoing that the prior art taught that the fatty acids of any of the drying or semi-drying vegetable oils might be used in the composition of a resin in which polyhydric alcohol and an organic polybasic acid are constituent elements.

It is established by the record that sunflower seed oil is a drying or semi-drying oil. In the examiner's statement we find the following: "Sunflower seed oil is a drying oil having an iodine value of 129-136 and the principal acids are oleic 33.4, linolic 57.5, palmitic 3.5, stearic 2.9. Linseed oil has an iodine value 175-202. The acids are: Solid acids 10-15, liquid acids, oleic 15-20, linolic 30, linolenic 38. Saturated acids 8, stearic 64.4, palmitic 290. It will be evident that the greatest difference is in the presence of linolenic acid in linseed oil."

In the affidavit of Dr. Hunt, introduced by appellant, with respect to the statement of the examiner above quoted, we find the following:

"I further depose and say that the data given in lines 19 to 24 of the mentioned page of the Examiner's Statement are substantially correct, but the Examiner's deduction in lines 24 and 25 is incorrect in so far as it conveys the impression that the differences in results obtained by applicant are due to the presence of linolenic acid in linseed oil and in its absence from sunflower seed oil, the error in the deduction just mentioned being conclusively shown by the fact that China wood oil resins, to the best of my knowledge, are inferior to the corresponding linseed oil resins from the standpoint of darkening, and yet China wood oil contains no linolenic acid.

"I further depose and say that although sunflower seed oil (hitherto relatively scarce oil, the procuring of which must·be specially sought for and which would not be offered in response to a request simply for a drying oil) has drying properties inferior to those of the commonly used oils such as linseed or China wood, yet films of the resins containing substantial quantities of combined sunflower seed oil dry about as fast as the corresponding linseed oil resins."

It will be observed that the affidavit admits the statement of the examiner that sunflower seed oil is a drying oil is correct, but asserts that its drying properties are inferior to the commonly used oils, yet the resins in which sunflower seed oil is used dry about as fast as the corresponding linseed oil resins. •

After the decision of the Board of Appeals, appellant made a request for reconsideration of such decision, which was denied. In his memorandum making such request appellant set out the International Critical Tables, in which sunflower seed oil is classified as a drying oil and its constituents are stated.

From the foregoing it appears that the prior art taught the use of drying and semi-drying vegetable oils in the preparation of resins of the general character here involved; that sunflower seed oil is a drying or semi-drying oil; that, aside from its quality of. preventing "yellowing," it is operative for the same general purposes for which drying and semi-drying vegetable oils were specified in the prior art. This is not denied by appellant, but he asserts that he is the first to discover that the use of sunflower seed oil will prevent yellowing of the resin, and that by its use the resin is "fast drying."

We are of the opinion that, so far as "yellowing" is concerned, appellant has only discovered an additional quality possessed by sunflower seed oil in a use which any one skilled in the art, following the teachings of the prior art, might make of it; so far as "fast drying" is concerned, it appears that sunflower seed oil was classified in the International Critical Tables introduced by appellant as a drying oil, and it would seem that the difference between it and other drying oils, with respect to "fast drying," is only a matter of degree. In view of the prior art cited, we think that any one skilled in·the art, with sunflower seed oil available, would naturally and without the exercise of the inventive faculty select it for the making of resins such as are here involved, although he might not know that it possessed the additional quality of preventing "yellowing."

The mere discovery of a quality of sunflower seed oil, not possessed by other vegetable drying oils, cannot be made the basis of a patent when the prior art shows that such oil is of the kind and class that such art taught was useful in the composition of resins of the character here involved.

We think the principle here involved is analogous to the well-established rule that mere discovery of an additional function in a device invented by another does not constitute invention. Weis v. Woodman, 65 F.(2d) 274, 20 C.C.P.A. (Patents) 1211; In re Lang, 82 F.(2d) 399, 23 C.C.P.A. (Patents) 994.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.