43 C.C.P.A.(Patents)

### Application of Charles E. INMAN.
### Patent Appeal No. 6161.

United States Court of Customs and Patent Appeals.
Dec. 8, 1955.

Dexter N. Shaw, Arvid E. Lyden, Philadelphia, Pa., and Harold L. Warner, Washington, D. C. (Howson & Howson, and William A. Smith, Jr., Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON, retired, Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 9, 10, 15, and 16 of appellant's application No. 136,388 for a patent on a chlorinated hydrocarbon product on the grounds (1) as lacking invention over the cited prior art, and (2) failure to differentiate patentably from the claims of appellant's co-pending application No. 136,389, which is now before this court in companion appeal No. 6162, 228 F.2d 229.

Appellant requested reconsideration of the board's pertinent rejections of the two cases hereinbefore described. The board declined to make any change in its position.

Claim 10 of application No. 136,388, which is typical of the claims involved in the present appeal, is as follows:

"10. A highly viscous to solid chlorinated petroleum hydrocarbon product having an average calculated molecular formula of $C_{13}H_{18}$ to $_{20}Cl_{10}$ to $_{16}$, a specific gravity at 20°C of 1.5 to 1.8 and a thermo decomposition rate at 180°C of less than 0.05 milligrams evolved HCl per gram of chlorinated products per minute after ¼ hours continued heating at 180°C."

The references relied on are:

Clark 2,214,877 Sept. 17, 1940; Dean et al., "Industrial and Engineering Chemistry," Vol. 37, pages 181–5 (1945); Kalichevsky et al., "Chemical Refining of Petroleum," second Edition, page 108 (1942).

Appellant's present application, like that involved in Appeal No. 6162, relates to the chlorination of petroleum hydrocarbons having a carbon content per molecule generally corresponding to that of the kerosene range. In the present case, however, the hydrocarbon used is one that has been refined in such a manner as to remove substantially all the aromatics and olefins as well as the non-hydrocarbon impurities. The refined hydrocarbon is chlorinated to give a chlorine content of over 60% by weight and is found to have an unexpectedly high stability as compared with similar products having a lower chlorination.

The Clark patent and the Dean et al. article, above cited, are the references relied on by the Patent Office in Appeal No. 6162, and their disclosure is sufficiently pointed out in our decision of even date herewith in that appeal. The Kalichevsky et al. article relates to the refining of kerosene. It states that "Kerosene stock from paraffin-base crude oil is usually free from aromatics and requires only mild treatment with acid or absorbents for conversion into a high-grade kerosene."

In our opinion in Appeal No. 6162 we have held that the Clark patent discloses kerosene chlorinated to more than 70% and, for the reasons given in that opinion, the same holding is made here. It remains to be determined whether the claims here under consideration present a patentable distinction over the chlorinated kerosene of Clark.

The hydrocarbons disclosed in the present case include the range of hydrocarbon cuts commonly referred to as kerosene, and the appealed claims would be satisfied by the chlorination to 70% of kerosene which had been refined to such a point that it contained less than 1% olefins and aromatics, and from which other impurities had been substantially removed.

The record indicates some difference of opinion between appellant and the Patent Office as to whether ordinary commercial kerosene is refined to the extent set forth in the application here involved. However, appellant's brief contains the following statement:

"The petroleum companies, however, have also recently placed on

the market petroleum fractions having the same average molecule size [as kerosene] but treated so as to remove fairly completely everything but the saturated aliphatic (including cycloaliphatic) hydrocarbons. These materials were developed primarily for special uses other than burning, such as for the preparation of horticultural sprays, since the kerosenes generally satisfactory for burning, as in lamps, stoves, etc., were found to be unsatisfactory. These special petroleum hydrocarbons are premium products and because of the extra processing in their preparation command a premium price, costing about twice as much as the conventional kerosene."

Moreover, the appellant's specification in the case at bar states:

"In preparing my highly chlorinated refined petroleum product, I prefer to use as a raw material petroleum hydrocarbons, consisting primarily of normal and branched paraffins and naphthenes, and existing in the range of $C_{10}$ to $C_{20}$, treated (such as by acids; for example, sulfuric acid, and by distillation) so as to remove substantially all non-hydrocarbon impurities and almost all aromatics and olefins. Two specific examples of such materials are those at present sold in commerce under the trade names of 'Ultrasene' and 'Ultrax' manufactured by Atlantic Refining Company."

It is thus clear that kerosene refined to the extent specified by appellant in the instant case is a readily available commercial product. In view of that fact, and of Clark's broad disclosure of the chlorination of kerosene to 70% or above, we are of the opinion, as was the board, that no invention would be involved in chlorinating highly refined kerosene to that extent.

It would normally be assumed, in the absence of any indication to the contrary, that a process suitable for ordinary kerosene would be also suitable for highly refined kerosene. Moreover, since Clark clearly states that he is dealing with aliphatic compounds, it is reasonable to infer that he desires to keep the amount of any non-aliphatic impurities present as low as practicable. So far as he may suggest the use of any particular type of kerosene, therefore, it would appear to be one of a relatively high degree of refinement.

■■ While it may be true that a highly chlorinated product made from a kerosene refined as disclosed in appellant's application is superior, and perhaps even unexpectedly superior, to a similar product made from less highly refined kerosene, such superiority does not constitute a basis for the issuance of a patent where the idea of chlorinating the highly refined kerosene to the extent indicated by appellant was fairly suggested by the prior art. As we said in In re Kepler, 132 F.2d 130, 133, 30 C.C.P.A., Patents, 726:

"A patent should not be granted for appellant's discovery of a result that would flow naturally from the teachings of the prior art."

See also In re Gauerke, 86 F.2d 330, 24 C.C.P.A., Patents, 725; In re Christensen, 82 F.2d 715, 23 C.C.P.A., Patents, 1015; and In re Leum, 158 F.2d 311, 34 C.C.P.A., Patents, 762.

■ For the reasons given herein, and in our opinion in companion appeal No. 6162, we hold that the appealed claims in this case defined nothing inventive over what is disclosed in the Clark patent. It is accordingly unnecessary to consider the further rejection based on an alleged lack of patentable distinction between the appealed claims and the claims of appellant's application No. 136,-389.

The decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.