**Application of James H. SHAPLEIGH.**
**Patent Appeal No. 6262.**

United States Court of Customs and Patent Appeals.

May 27, 1957.

Rehearing Denied Oct. 10, 1957.

Clinton F. Miller, Wilmington, Del., for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON, retired, Judges.

JOHNSON, Chief Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, rejecting claims 1–3, 5, 6, 10, 11, 13, 14 and 18–20 as unpatentable over the prior art in appellant's application for "Furnace and Process for Treatment of Fluid Reactants." Claims 4, 7–9, 12 and 15–17 were withdrawn from further consideration under Patent Office Practice Rules, Rule 142(b), 35 U.S.C.A.Appendix, as not readable on the elected species and are thus not here on appeal.

At oral argument, counsel for appellant agreed that claims 10 and 18 were, as well, not readable on the elected species. In view of this fact and notwithstanding the fact that the board considered said claims in its decision, we will not review its action as to these claims. Thus, the claims properly before us are 1–3, 5, 6, 11, 13, 14, 19 and 20.

The following claims are representative of those on appeal:

"1. A tube-type reaction furnace for the treatment of pressur-

ized fluid reactants having in combination a heating chamber, means for generation of radiant heat in the heating chamber, at least one externally radiantly heated, elongated metallic reaction tube disposed in the heating chamber, an externally radiantly heated, outer metallic tube disposed about a substantial portion of each reaction tube in the region of maximum stress within the heating chamber, each reaction tube extending longitudinally through the bore of the outer tube, said outer tube being in fluid-impervious relationship with both the reaction tube and the heating chamber, means for delivering pressurized fluid reactants to each reaction tube, and means for removing pressurized reaction products from each reaction tube.

"19. In the treatment of fluid reactants in a tube-type furnace under conditions of high pressure and high temperature the process which comprises passing fluid reactants through a reaction zone at a pressure substantially above atmospheric pressure, introducing a substantially inert gas into a confinement zone disposed about the reaction zone in fluid-impervious relationship therewith, and heating the reaction zone to a predetermined temperature by means disposed externally of the confinement zone and in fluid-impervious relationship therewith."

The alleged invention relates to a tube-type reaction furnace suitable for the treatment of fluid reactants, and particularly for the catalytic or non-catalytic treatment of hydrocarbons under conditions of high temperature and pressure. Tube-type furnaces have in the past been employed for such purposes but have been subject to rupturing or cracking under the high temperatures and/or pressures used. Appellant has attempted to obviate the problems incident to the use of such tube-type furnaces by providing an outer metallic tube disposed about each reaction tube in the region of maximum stress, said outer tube being in fluid-impervious relation with both the reaction tube and the furnace which surrounds said outer tube. Such a provision not only allows for the indirect heating of the reaction tubes by radiation, thus prolonging the life of said tubes, but, as well, serves to isolate escaping reaction gases from a ruptured tube from the furnace proper, thus avoiding the possibility of explosion or damage to the entire furnace unit. In accordance with some of the more specific embodiments, the outer tube may be vented to the atmosphere or may be associated with pressure actuated valving means which will automatically shut off either the input or output (or both) to the reaction tube which is ruptured. An inert gas, such as nitrogen, may be maintained in the annular space between the outer and inner tube to diminish corrosion of the latter. The inert gas may also be maintained under pressure to remove much of the pressure load from the reaction tube.

The references relied upon are: Sommermeier 1,286,135 Nov. 26, 1918; Metzger 1,358,383 [1] Nov. 9, 1920.

The Metzger patent, insofar as pertinent, discloses an apparatus for manufacturing alkali cyanid consisting of a reaction tube, D-shaped in cross section, which extends through a furnace and which is surrounded about a substantial portion of its length by another tube of D-shaped cross section. The annular space between the outer and inner tubes communicates with the interior portion of the inner tube through a suitable opening in the wall of the latter tube. In operation, a mixture of carbon and alkali metal carbonate or hydroxide is charged into the inner tube and nitrogen gas is passed into the annular space and then through the opening in the inner tube into contact with the charge. Heat is provided by radiation from the furnace and through the walls of the two tubes. Metzger states that the purpose of the nitrogen gas is twofold: (1) to

[1]. This number appears incorrectly in the board's opinion in the record as 1,357,383.

serve as a reactant in the production of the cyanid, and (2) to protect the inner tube against the oxidizing action of the furnace gases or other deteriorating action.

The Somermeier patent discloses an apparatus for cracking hydrocarbons. The apparatus comprises a central reaction chamber in which is disposed electric heating means, said chamber being itself disposed within a larger, outer chamber. The reaction chamber communicates with the outer chamber through a small opening in the discharge conduit leading from the former. In operation, the reactants are treated under high pressure and temperature conditions in the reaction chamber, the pressure in the reaction and outer chambers being equalized by means of the opening connecting the two. The outer chamber is at a lower temperature than the reaction chamber, thus increasing its ability to withstand pressure strains. Pressure strains on the inner reaction chamber are, of course, minimized by virtue of the pressure conditions in the outer chamber.

■ The board, in holding the appealed claims unpatentable, applied a three-fold ground of rejection. It first held all of said claims unpatentable over Metzger in view of Somermeier. As to this ground, the board was of the opinion that Metzger showed the basic tubular furnace claimed by appellant; that it would be uninventive to utilize a high pressure shell to neutralize the internal pressure of the reaction chamber, as this was shown by Somermeier; that it would not involve invention to seal the opening between the reaction chamber and outer shell of Metzger; and that the broad recitation in several of the claims of valving means for flow control involved no inventive variations from conventional control and safety devices.

A second ground of rejection included a rejection of those claims which con-tained no limitations as to the use of pressure in or means to supply pressure to the annular space between the reaction chamber and outer shell (claims 1, 3, 5, 11, 13, 18 and 19) on Metzger alone, the balance of the claims (2, 6, 14 and 20) being rejected on Metzger in view of Somermeier.

The third ground of rejection was that the application of the teachings of both the Metzger and Somermeier references to the use of tubular furnaces generally, which furnaces are used for cracking hydrocarbons and which the board stated were "admittedly conventional," would not amount to invention.[2]

Appellant, in an extremely well argued brief, contends that both Metzger and Somermeier are lacking in essential details as references against his claims; that they are from non-analogous arts and therefore were improperly combined; that a modification of the Metzger apparatus to eliminate the opening between the reaction chamber and the outer shell would render Metzger's device inoperative for its intended purpose; that neither Metzger nor Somermeier are concerned with appellant's problems and therefore cannot be said to contribute a solution thereto, etc.

Notwithstanding appellant's arguments, we are of the opinion that the decision of the board is proper and must be affirmed.

As aforesaid, the board, in its third ground of rejection, stated that tubular furnaces were conventional for cracking hydrocarbons. Appellant, in fact, concedes this to be true in his specification. Appellant, in his review of the prior art in his specification, states that the problems incident to use of standard tubular furnaces were well known. These problems, all of which contribute eventually to the rupture or cracking of the tube walls, appear to be as follows: (1) deterioration of the tube walls due to direct impingement on said walls of high

2. The board's statement as to what was conventional in the tubular furnace art is a statement of fact within the knowledge of an employee of the Patent Office and, unless challenged by appellant under the provisions of Rule 107 of the Patent Office, is available as a reference against the claims. In re Lewis, 96 F.2d 1009, 25 C.C.P.A., Patents, 1273.

temperature flames or combustion gases; (2) deterioration of the tube walls by carburization, sulphidation, sulphation or the formation of nitride and oxide scales on the outer walls of the tubes; (3) deterioration of the tube walls due to abnormal pressure strains imposed upon the tube walls when high pressure processes are employed. It was also well known by those skilled in the art that in the event of rupture or cracking of the tube walls due to any or all of the foregoing effects, explosive and other dangerous conditions were created by the escape of the reaction gases into the heating furnace proper when high pressures were employed.

So much, as is conceded by appellant, was known in the field before appellant's entry thereinto. We are of the opinion that the foregoing considerations are essential to a proper analysis of the issues raised on this appeal, as will hereinafter be seen.

Claims 1, 3 and 11 are drawn to the basic apparatus consisting essentially of a reaction tube surrounded by an outer metallic jacket, both of which are disposed within a heating chamber, and radiant heating means within said heating chamber. The outer metallic jacket is in fluid-impervious relation to the reaction tube and the heating chamber. These claims contain no limitations as to pressure means for the annular space between the outer jacket and the reaction tube nor as to the provision of means for supplying inert gas to said space; it is obvious, therefore, that they are directed towards the solution of only the first of the aforelisted problems. Metzger shows the expedient of utilizing an outer shield around a tubular reaction chamber which is exposed to radiant heating. As appellant recognizes in his reply brief, at least one of the purposes of Metzger's outer shield was to serve as a barrier preventing the combustion gases from the furnace from contacting the metal surfaces of the inner reaction chamber, viz. —a problem identical to that which the embodiments of claims 1, 3 and 11 are designed to obviate. To utilize the Metz-

ger teachings in conjunction with the operation of conventional tubular furnaces, viz.—to provide an outer jacket about a metal reaction tube, would not, in our opinion, amount to invention. While Metzger may have been concerned with problems different from those of appellant with respect to the process for which his apparatus was designed, it is well apparent that the specific problem involved with respect to claims 1, 3 and 11 is identical to that obviated by Metzger's use of the outer jacket.

Appellant, however, argues that the outer jacket of Metzger is fluid-pervious in that it is constructed of refractory material and that, at best, the teachings of Metzger would result in a reaction tube-jacket combination wherein the reaction tube communicates with the jacket through an opening; that claims 1, 3 and 11 contain limitations providing for fluid-impervious relationship between the heating chamber, outer jacket and reaction tube; and that unless the walls are fluid-impervious, the basic objective of appellant's alleged invention will be frustrated: the isolation of fluid reactants from the heating chamber in the event of rupture or cracking of the reaction tube.

We agree that Metzger would, at best, suggest the use of an outer jacket constructed of refractory material but at this point, our agreement with appellant ceases. We cannot conclude that Metzger's refractory material is, as appellant claims, fluid-pervious. Metzger discloses that preferred refractory materials are silica or fire clay. There are, no doubt, various varieties of refractory materials composed of silica and fire clay, some of which may be what would be described as "fluid-pervious." It is well known, however, that silica refractories are used where gas-tight conditions are essential, such as in the linings of coke ovens, indicating that varieties of the above materials are, in fact, fluid-impervious. Inasmuch as Metzger passes nitrogen through the annular space between the reaction chamber and the refractory jacket and it is obviously de-

sirable, if not essential, that there be no migration of the nitrogen through the refractory material, we are of the opinion that the refractory material used or, at the least, suggested by Metzger is fluid-impervious. Appellant has advanced no argument to dissuade us from reaching this conclusion.

And though we are of the opinion that the refractory material of Metzger would remain fluid-impervious under the high pressures disclosed in appellant's specification, it is important to note that claims 1, 3 and 11 are not limited to use in high pressure systems.[3] Undoubtedly, the refractory material of Metzger, as applied to the conventional tube-type furnace structure, would be equivalent in a patentability sense to the fluid-impervious outer jacket of appellant under low pressure conditions.

Appellant's second contention is, as well, without merit. Metzger's disclosure as to the use of an outer refractory jacket has been applied only as a general teaching of the use of such an expedient in connection with radiantly heated reaction chambers. One incorporating such an expedient in connection with a conventional tube-type furnace would obviously not provide communication between the reaction tube and the outer jacket unless it were desirable, as in the Metzger system, to pass the gas used to prevent deterioration of the reaction chamber wall into said reaction chamber to serve as a reactant. It is thus clear that, though Metzger was not concerned specifically with the problem of isolating his reactant fluids from the heating chamber proper in the event of rupture of the reaction chamber walls, he was concerned with at least one of appellant's problems, viz.—the first of the three heretofore mentioned. That the application of the Metzger teachings, as to the solution of the latter problem, to the conventional tubular furnace results only incidentally (or accidentally) in the so-

lution to the former problem or which, at the least, results in a structure upon which appellant's claims read, can be of no avail to appellant. See In re Kepler, 132 F.2d 130, 30 C.C.P.A., Patents, 726, and In re Gauerke, 86 F.2d 330, 24 C.C.P.A., Patents, 725. The board's rejection of claims 1, 3 and 11 is accordingly affirmed.

Claim 2 differs from claim 1 in that means are provided in the former for introducing and maintaining noncombustible gas under pressure into the annular space between the outer jacket and the reaction tube. This feature serves to obviate the second problem heretofore set forth. Metzger discloses the introduction of nitrogen into the annular space between the outer jacket and the reaction chamber for a purpose identical to applicant's. The fact that Metzger's nitrogen also serves as a reactant to form the cyanids of his process does not detract from its use as an inert gas *while in the annular space*. Clearly, appellant's arguments to the effect that the nitrogen of Metzger is not inert because it later serves as a reactant are tenuous. The recitation in this claim that means are provided for maintaining the noncombustible gas under pressure in the outer jacket does not serve to render the claim patentable over the art relied upon. The nitrogen gas of Metzger is unquestionably maintained under a positive pressure, for otherwise, it could not be forced into the apparatus. The board's rejection of claim 2 is accordingly affirmed.

Claims 5 and 13 are dependent upon claims 3 and 11, respectively, and add thereto the limitation that one end of the outer tube is closed, the opposite end containing a pressure release means. Pressure release means are well known in the art. To provide such means, if in fact it were found that excessive pressure existed in the outer jacket for any reason, would be an obvious expedient.

3. We do not regard the statement in each of the apparatus claims that the furnace is "for the treatment of pressurized fluid reactants" to be a valid limitation on the recited structure therein. Similarly, the limitation in each of the claims that means are provided for delivering pressurized fluid reactants to one end of each reaction tube does not limit the apparatus for use in *high* pressure systems.

We agree with the board that these claims are unpatentable.

Claims 6 and 14 depend from claims 3 and 11, respectively, and add thereto means for supplying and maintaining a noncombustible gas under pressure to the outer tube as well as valving means to selectively discontinue the flow of reactants into the reaction tube and to prevent backflow of the reaction products into the reaction tube. As aforesaid, the former limitation does not lend patentability to these claims. The board was of the opinion that the latter limitation, as well, failed to lend patentability to said claims since:

> " * * * No specific co-operative relationship is set out by these claims which accurately defines the control arrangement. As here broadly indicated, it would appear that no inventive variations from conventional control and safety devices are presented. * * * "

We agree with the board's rejection of these claims. As disclosed in appellant's specification, the valving means are designed to selectively discontinue the flow of reactants into the reaction tube and to prevent backflow of the reaction products into the reaction tube *at such time when a rupture in the wall of the reaction tube occurs and the pressure in the annular space exceeds the normal pressure therein.* The valving elements recited in these claims do not set forth these essential limitations. As the claims now read, they present, as the board stated, "no inventive variations from conventional control and safety devices."

Claims 19 and 20 are drawn to a process. Claim 19, which has hereinbefore been set forth, is obviously unpatentable for the reasons set forth in the rejection of claims 1 and 2. Claim 20 is similar to claim 19 except for the additional limitation that the noncombustible gas is maintained at a pressure "substantially above atmospheric pressure but below the pressure of the fluid reactants in the reaction zone." This limitation serves to obviate the third problem heretofore discussed. Somermeier shows the expedient of placing a reaction chamber within a larger chamber and maintaining a positive pressure in the latter to reduce pressure strains on the walls of the former. It is not seen, therefore, that to apply the general teachings of Somermeier to the unpatentable process of claim 19 would involve invention. True, Somermeier teaches that the pressures in the outer and inner chambers are equal whereas claim 20 clearly provides for a pressure gradient. It is to be noted, however, that though this claim calls for a pressure "substantially above atmospheric pressure" it does not state how far below the pressure of the fluid reactants in the reaction zone said pressure is to be maintained. As the claim now reads, the pressure of the noncombustible gas could be only minutely below that of the reaction chamber, in which case results no different from that obtained by the practice of the process of claim 19 would be obtained.

■ Appellant objects to the use of Somermeier as a reference against claim 20 due to the presence in the apparatus of that reference of an opening between the reaction and outer chambers as well as the fact that Somermeier's reaction chamber wall is not fluid-impervious. He also contends that Somermeier and Metzger are from non-analogous arts and therefore cannot be combined as prior art references. Appellant's first contention is disposed of for the reasons used in the similar objection to the presence in Metzger of the opening connecting the reaction chamber and the outer jacket. His second contention is unfounded, as may be seen from a cursory glance at the Somermeier disclosure, wherein it is stated that:

> " * * * Each of these members forming the interior reaction chamber may be suitably constructed of refractory material, *which may be supported or reinforced by an external armor 12 * * * .*" (Emphasis supplied.)

This armor, as is seen in the drawing accompanying the Somermeier patent, extends completely about the reaction chamber. Appellant's third contention

is, as well, without merit. The test as to whether two references are from non-analogous arts is whether one seeking to solve a problem with respect to the embodiment of a reference in one art would be apt to seek the solution to said problem in the other art. See In re Lobl, 228 F.2d 234, 43 C.C.P.A., Patents, 734. In the instant case, the apparatus of Metzger, that of Somermeier and the conventional tube-type furnace are each in the furnace art. That Somermeier is not concerned with a tube-type furnace does not detract from the applicability of the teachings found therein to the instant case. Problems involved with respect to tubular furnaces are not peculiar to such furnaces. We are of the opinion that one seeking to solve the admittedly recognized problems heretofore discussed in the tubular furnace art would not restrict his search for a solution thereto to what is known with respect to such furnaces but would extend his search at least to furnaces of the type disclosed by both Somermeier and Metzger.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate herein in place of COLE, Judge, absent because of illness.