30 C.C.P.A.(Patents)

## In re KEPLER.

### Patent Appeal No. 4671.

Court of Customs and Patent Appeals.
Dec. 1, 1942.

Edwin A. Andrus, of Milwaukee, Wis. (Lee B. Kemon, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office finally rejected claims 15, 16, 17, and 18 of appellant's application for a patent, and on appeal the Board of Appeals affirmed the action of the examiner as to claims 16 to 18, inclusive, but allowed claim 15. Applicant has appealed here from the decision of the board affirming the examiner's rejection of claims 16 to 18, inclusive.

The invention relates to methods of forming multi-layer pressure vessels which are capable of withstanding high internal pressures and which have a number of layers consisting of concentrically arranged tubular members in close contact. The application particularly relates to the tightening of the layers and maintaining them permanently in close contact. The method of manufacturing the layers and placing them together is, in general, that disclosed in United States Letters Patent No. 1,925,118 issued to one Richard Stresau.

In making this kind of vessel, a relatively thin metal plate is rolled into cylindrical shape and welded at the longitudinal meeting edges. The welded seam is next ground smooth. Then another plate is rolled into cylindrical shape of slightly larger diameter so as to fit snugly over the first. It is pressed into tight engagement over the first cylinder, clamped in position, and welded at its meeting edges, the previously fabricated section serving as a backing plate while the seam is welded. Thus the process continues until the desired number of layers or the desired thickness of the vessel wall is reached. The several different rolls thus constitute a multi-layered wall, forming, when end closures are welded thereto, a vessel which has greater strength than a vessel of the same amount of metal if cast or rolled into one piece.

In his application appellant states that various means have been employed to bring the layers into better nesting relation during the welding process, citing, for example, the application of clamps and bands to the exterior of the shell while other devices press against the inner surface. He points out, however, that by none of these mechanical means is it possible to achieve a perfectly tight fit because of certain tolerances which creep into factory operations, the consequence being that the stresses created when great pressure is put upon such vessels in use are unevenly distributed since they are thrown primarily onto the inner layers and to a much less extent onto the outer layers, thereby weakening the structure.

Appellant states that his object is to provide a pre-stressing operation in the manufacture of multi-layer vessels so as to expand the inner layers against the outer layers to the end that more even distribution of working stresses over all the layers will result. To accomplish this he closes off the vessel and applies pressure to its interior to expand the walls thereof. He states that a light oil or other suitable fluid is pumped into the vessel, causing it to expand. He uses gauges to determine the amount of pressure applied and seeks to have the internal layers expanded beyond their elastic limit. He points out that in expanding the inner layers beyond their elastic limit, often the outer layers have been given no permanent deformation. He therefore applies sufficient pressure to stretch the inner layers to a point where the outer layers are also expanded to such an extent that upon release of the pressure the latter will squeeze against the inner layers and thus bring about a sturdy, compressed wall of sheets of metal.

In his specification he states:

If the layers of the vessel are expanded beyond the elastic limit of the steel a per-

manent deformation or set will be obtained and removal of the pressure will not cause the structure to regain its original form. In expanding a layer vessel it is possible to stretch the steel in the inner layers beyond the elastic limit without giving the outer layers a permanent deformation. However, to be certain that the inner layers are actually stretched beyond the elastic limit a certain amount of permanent expansion should be transmitted to the outer layers. Otherwise when the pressure is released and the outside layer returns to its original shape the inner layers may shrink back without having become permanently expanded into the outer structure. The fact that the outside layer is permanently expanded indicates that the inner layers have been permanently stretched into the outer structure, and that the elastic return of the several layers upon release of pressure will be substantially equal; thereby maintaining the layers in uniform tight contact throughout.

Tests have been performed in which the outside layer has been given a slight permanent set and measurements taken to determine the increase in the circumference of the vessel. The desired increase in circumference can be calculated from the dimensions of the vessel and the yield point of the steel. When the outside layer is given this set, the desired pre-stressing condition exists with the inner layers stretched beyond the yield point and permanently expanded against the outer layers.

All the claims, including the subsequently allowed claim 15, were rejected by the examiner upon the following references: Brownell, 280,905, July 10, 1883; Badger, 895,412, August 11, 1908; Krauss (British), 368,111, March 3, 1932.

Claim 16 is illustrative and reads as follows: 16. The method of improving the stress distribution under load of a thick walled multi-layer pressure vessel which comprises, displacing the air in the vessel with a relatively incompressible fluid medium which is relatively inexpansible at the temperatures and pressures employed, applying pressure to said medium to bring the layers into tight contact with one another and stress the metal to a value which will effect a substantially equal elastic return for all of the layers, and then releasing the pressure.

The examiner rejected all the claims upon Brownell and also upon Badger in view of Krauss.

The Board of Appeals, in deciding the case, had the following to say:

The claims have been rejected on the patent to Brownell, and also on the patent to Badger in view of the patent to Krauss. The examiner holds it would not amount to invention, in view of Krauss, to substitute liquid for the gas used by Badger. Brownell discloses the use of either liquid or gas.

Claim 15 requires the metal of all the layers to be stressed at least to its elastic limit. This means that the metal of the inner layers is stressed beyond its elastic limit, as explained in the specification. We find nothing in the references indicative of stress in the outer layer of the order recited in this claim. We consider the claim to be allowable.

Claims 16, 17, and 18 require the metal to be so stressed that the elastic return of the metal in the outer layer equals or exceeds that of the inner layers. It is explained at the top of page 8 of the specification that the elastic return of the outer layer is greater than that of the inner layers when the metal of the latter has a lower elastic limit than does the metal of the outer layer. We do not believe that these claims require the actual stressing of the metal of the outer layer to such degree as to patentably distinguish from the references.

The Brownell patent discloses a method of making a multi-layer vessel by placing a brass or copper lining within a shell of iron or steel and supplying liquid under pressure to the interior of the vessel to force the lining tightly against the shell. Brownell was concerned with making boilers and discloses only an inner liner placed against the outer shell or body. He states: "* * * After the soldering is finished, I subject the boiler to hydraulic or pneumatic pressure on the inside by means of any suitable apparatus. This forces the copper lining tightly against the body * * *, and thereby drives out any air which may have been between the lining and body. * * *"

The Badger patent is also concerned with making multi-layer vessels, to which Badger refers as "compound receptacles." He shows an outer member and an inner member with a layer of solder between the two. He states that the inner member may be of lead, tin, or zinc. He suggests the use of pressure at one hundred pounds per square inch from "any suitable air-pressure sup-

ply." We quote from the specification (drawing numerals omitted; italics ours): " * * * The pressure is first applied in order to force the coated wall of the [inner] member against the complemental wall of the [outer] member evenly. After this is done heat is applied until the required union between the two walls is secured. In most cases, I have found where I employ steel for the outer member and tin or lead for the inner member, a pressure of one hundred pounds to the square inch will accomplish the desired result, *but this pressure may be varied depending upon the conditions attending the particular piece of work.* By this method, the inner member is forced against the outer member uniformly at all points, and this pressure can be maintained during the softening of the coating, and continued until after the parts have united and cooled, thereby effecting a uniform and permanent union between the inner and outer member."

The British patent to Krauss relates to the manufacture of pipes and tanks. Krauss begins his operations in much the same manner as appellant. He discloses the use of water as a hydraulic pressure medium for the expanding operation. He states that a number of different tubes can be expanded together in this manner and points out in his specification that a permanent expansion of as much as twenty percent may be produced in the inner chamber.

Claim 15, as observed from the quoted portion of the board's opinion, was allowed over the rejection of the examiner, upon the theory that it required that all the layers be stretched at least to their elastic limits and that nothing of the kind had been shown in the prior art. The board agreed with the examiner in rejecting claims 16, 17, and 18 because it did not believe that "these claims require the actual stressing of the metal of the outer layer to such degree as to patentably distinguish from the references."

We agree with this holding of the board. If a manufacturer of multi-layer vessels followed the teachings of the three patents cited, it seems clear that his process might well involve every step which appellant teaches. Each of these patents shows a stressing or stretching of the inner member. It is obvious that if such member is stretched sufficiently, the outer member will be stretched also to some extent, and that if the outer member is not stretched beyond its elastic limit, it will have a tendency when the pressure is released to return to its original shape and thus closely adhere to the inner member.

While it is true, as urged by appellant in his brief, that the prior art did not teach in detail, as has appellant, the redistribution of stresses in the several layers of a multi-layer pressure vessel, we think that if the teachings of the prior art were followed, there would be a redistribution of stresses such as appellant claims to have discovered. A patent should not be granted for appellant's discovery of a result that would flow naturally from the teachings of the prior art. It may be that appellant, by his study of the art and his teachings therein, has made distinct and advantageous advances in the art, but we are constrained to agree with the board that what he has done does not amount to invention.

The decision of the Board of Appeals, affirming that of the examiner in rejecting the claims on appeal, is affirmed.

Affirmed.