**In re CARPENTER et al.**

**Patent Appeal No. 4751.**

Court of Customs and Patent Appeals. June 22, 1945.

Rehearing Denied Sept. 26, 1945.

Ellis S. Middleton, of New York City (Edmund H. Parry, Jr., of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

In this appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner, there are involved three method claims of an application for patent relating to the

refining of crude olefinic nitriles. A number of claims stand allowed. The three claims on appeal read:

"1. A method of removing water from a crude olefinic nitrile mixture containing water which comprises azeotropically distilling water therefrom.

"19. A method of refining crude acrylonitrile containing water which comprises distilling therefrom an azeotropi mixture of acrylonitrile and water.

"20. A method of refining crude crotonic nitrile containing water which comprises distilling therefrom an azeotropic mixture of crotonic nitrile and water."

It will be observed that the claims are substantially identical except that claim 1 embraces nitriles broadly, while the others relate to specific forms. So far as the claimed process is concerned, there is no distinction between them and they stand or fall together with respect to patentability.

In the brief for appellants the alleged invention, although designated as a "very simple operation," is described at considerable length. It is fairly epitomized in the following from the brief of the Solicitor for the Patent Office: "The application here involved discloses a process for removing water from olefinic nitriles, and is based on the fact that when a mixture of nitriles and water is heated it will distill azeotropically, that is, the distillation will continue at a constant temperature and the distillate will have a uniform composition. Further, this distillate includes a much higher percentage of water than does the original mixture, so that, if distillation is continued for a sufficient period, all the water will pass off, leaving completely dehydrated nitriles behind."

The solicitor's brief adds: "In practice, to avoid loss of the nitriles which are distilled off the appellants condense the distillate, separate the excess water, and return the nitriles to the still, but these steps are not included in the appealed claims."

The steps so defined appear to be embraced in some of the allowed claims.

Expressed in simple terms, appellants' process is one of refining a crude olefinic mixture by azeotropically distilling from it the water which it contains.

In rejecting the claims, the examiner cited two patents as references, to wit: Ricard et al. 1,862,706 June 14, 1932; Stone 2,180,021 November 14, 1939.

While the appealed claims were rejected on either of the references, the examiner in the concluding sentence of his statement following the appeal to the board said, "To sum up, the references cited are scarcely necessary, as mere distillation of multitudinous substances and mixtures is a common expedient."

The disclosures of the references were stated in the board's decision as follows: "* * * Stone shows a mixture of cellulose acetate, acetic acid and water and Ricard et al disclose a mixture of isoamyl alcohol, isobutyl alcohol and water. In each patent the mixture is run into a still containing a water withdrawing agent. Ricard et al use benzene. The benzene and water are distilled off azeotropically and the water will separate from the condensate and the benzene is returned to the still. After the water has been removed, the components of the mixture can be separated."

In concluding its decision, the board said inter alia: "It seems to us that the examiner is warranted in refusing the broad claims before us. He has allowed thirteen claims which involve the procedural steps employed. We think that any one skilled in the art would naturally attempt to separate any new mixture of two liquids by azeotropically distilling them. In many cases he would find that this cannot be done. However, if he discovers that it can be done, he has still not made anything but an obvious contribution. It would certainly be obvious to try to azeotropically distill a mixture and to find that it can be done would not be inventive."

It is conceded that neither of the reference patents teaches azeotropical distillation of water from "a crude olefinic nitrile mixture" named in claim 1, or from the specific substances named in claims 19 and 20, which mixture and substances constitute appellants' starting materials, but it seems clear that the processes of both Ricard et al. and Stone, as applied to their starting materials, are the same as that followed by appellants in so far as the process is defined in the claims on appeal.

Disregarding the Stone patent which appears to be merely cumulative, we quote from the brief of the Solicitor for the Patent Office (omitting record page references) the following: "* * * Ricard [et al.] is concerned with the separation of two liquids, which he designates A and B, the

former being almost or quite insoluble in water, while the latter is more volatile. It is found that, if such a mixture contains water, the water will interfere with the separation. Accordingly it is desirable to remove the water as a preliminary step. This is accomplished by heating the liquid in the still 1 of Fig. 1 which causes an azeotropic mixture of water and component A to pass into the condenser 8 and separator 9. The excess water is withdrawn from the bottom of the separator while the liquid A is returned to the still."

It is contended by appellants in substance, (1) that the reference patents embrace "three-component" mixtures; (2) that no olefinic nitriles are "involved in their disclosure"; (3) that *they require the addition of a third component* (Italics supplied), while in appellants' invention no third component is used and nothing added to their starting material, and (4) that the references, therefore, are not pertinent.

With respect to the contention above italicized it may be said that there is an expression in the decision of the board which indicates that the board agreed with it (although it did not agree that the references were thereby rendered not pertinent), but the brief of the Solicitor for the Patent Office points out that the Ricard et al. patent definitely teaches the removal of water without the addition of any third component. We quote the following from the brief: " * * * As a matter of fact, however, Ricard et al. very definitely contemplate the removal of the water without the addition of a withdrawing agent. Thus in lines 16 to 25 on page 23 of the record they explain that they may either add a withdrawing agent or may utilize the component A itself to form the azeotropic distillate with the water and in example 2 they describe a process in which this distillation is effected without adding another material. It is true that the starting liquid of Ricard et al. includes two components, A and B, in addition to water, but these are the original ingredients, and neither is added for the purpose of effecting the distillation. Ricard et al., therefore, except for the specific starting material, describe the identical process claimed here; and the fact that their starting mixture is made up of two components plus water, instead of one plus water, is entirely immaterial."

In the brief for appellants it is said:

"We have admitted on the record that two component azeotropes are old. We are perfectly willing to admit that distilling is old, that condensation of a distillate is old, that stratification of two immiscible liquids is old. The fact remains, however, that the discovery that olefinic nitriles and water form azeotropes and that such azeotropes contain water in a percentage in excess of the solubility of water in the nitrile are undeniably indigenous to these applicants.

"The refusal by the Board of Appeals of the appealed claims is based upon the conclusion that the discovery that olefinic nitriles and water form such azeotropes is not a patentable discovery."

With respect to the foregoing it may be said that the board stated that appellants "predicate patentability on the fact that they have discovered that water and the nitrile forms an azeotropic mixture," and that it agreed with the examiner that "it is improper to grant a patent for separating two liquids in a mixture by azeotropically distilling the mixture merely because it has been discovered that the two liquids form an azeotropic mixture."

The claims on appeal do not seem to us to be directed to a discovery that olefinic nitriles and water form azeotropes. As shown by their texts, they are directed to nothing more than a method of removing water by a distillation process concededly old. We are unable to agree that it involved invention to apply the old method to the particular substances involved in the appealed claims. No authorities are cited in the brief on behalf of appellants. The brief of the Solicitor for the Patent Office cites Dow Chemical Co. v. Halliburton Oil Well Cementing Co. 324 U.S. 320, 65 S.Ct. 647; In re Gauerke, 86 F.2d 330, 24 C.C.P. A., Patents, 725; and In re Kepler, 132 F.2d 130, 30 C.C.P.A., Patents, 726. We deem the decisions so cited pertinent.

The decision of the board is affirmed.

Affirmed.