34 C.C.P.A.(Patents)

## Application of PARLANTI et al.
### Patent Appeal No. 5230.

Court of Customs and Patent Appeals.
Jan. 7, 1947.

Glascock, Downing & Seebold and Henry C. Parker, all of Washington, D. C. (John J. McLaughlin and Sidney Wallenstein, both of Chicago, Ill., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in his rejection of claims 21, 23, and 24, being all the claims in appellants' application for a patent for alleged "new and useful improvements in Casting of Non-ferrous Metals."

The rejection was based upon the ground that the appealed claims lacked invention over the disclosure of the patent to Newton et al. in view of the patent to Todt, cited as follows:

Todt, 1,973,550, September 11, 1934.

Newton et al., 2,023,645, December 10, 1935.

Appellants request that the appeal be dismissed as to claim 21 for the stated reason that the involved subject matter is amply defined by claims 23 and 24, which read—

"23. The process of casting light metals, selected from a class consisting of aluminum, magnesium and alloys of these metals, which comprises casting such a metal in a mold formed from a metal consisting substantially of aluminum, the mold cavity of which has been anodized to produce an oxide film on the surface thereof.

"24. In the casting of aluminum and aluminum alloys, the process which comprises melting such a metal and pouring the molten metal into the cavity of a mold formed from a metal consisting substan-

tially of aluminum and having a melting point not substantially higher than that of the metal to be cast, said mold cavity having a surface formed of an integral anodized oxide coating, whereby adherence of the metal to said mold cavity is prevented owing to the increased rate of heat transfer from the cast metal to the mold".

The Todt patent relates to a mold made of cast iron, steel, copper, brass, or other suitable material, having a liner made of copper, brass or other metal of high heat-conductivity, and used to cast metals having a relatively high melting point. The cavity in the mold, as noted, is lined with metal and no suggestion appears that the cavity be coated with anodized oxide.

The patent to Newton et al., hereinafter identified as Newton, relates to the manufacture of casting dies, particularly for use in making castings of low melting point metal. The claims define not only a zinc base alloy die or mold whose cavity has been coated with anodized oxide but also the method of finishing zinc base alloy dies for casting low point metals.

The specification states, however, that it is also possible to make satisfactory dies from alloys consisting principally of aluminum, provided such alloys are practically free from lead or tin.

The board in its decision directed attention to the fact that the examiner cited Todt for its teaching that it is old to cast metals in a mold which is made of a metal of the same or lower melting point than the metal to be cast and that to anticipate the complete method defined by the appealed claims it was necessary only to cast aluminum in the mold defined by Newton.

The board in reaching its final conclusion, however, considered that it would not amount to invention to cast light metals, such as aluminum, magnesium and alloys of these metals, in the mold of Newton. The Solicitor for the Patent Office takes the same position here.

Appellants take no issue with the fact that Newton discloses a mold and coating of the type defined by the appealed claims. They contend, however, that Newton not only does not teach the claimed process but on the contrary actually teaches the use of a mold which would be wholly inoperative to carry out such process.

The issue thus presented is whether invention was involved in casting aluminum, magnesium, or the alloys thereof in the coated mold disclosed by the patent to Newton.

In the determination of that issue it is necessary for the court to consider the following language quoted from the disclosure of the patent to Newton:

"* * * The invention is especially applicable to the making of toys of cheap though low melting point metals, which metals necessarily are largely composed of lead. It is important therefore to use an alloy for manufacturing the dies which contains practically no lead or tin, as the presence of even minute quantities of such metals would tend to cause the surfaces of the dies to blister, and alloying of the casting metal with the lead and tin in the die with subsequent pitting and erosion of the die will gradually take place. * * *"

Relying upon the language hereinbefore quoted, appellants draw the conclusion that the class of metals utilized for casting by Newton is limited solely to "low melting point metals" which, as defined by the patent, "necessarily are largely composed of lead."

It is argued that since aluminum and magnesium are not low melting point metals, the disclosure of Newton is in nowise germane as an anticipatory reference to the process defined by the rejected claims.

There can be no doubt that Newton does not expressly suggest the casting of aluminum or magnesium in his zinc die but, examining the question in the light of the entire specification, it is clear that Newton's die is applicable to low melting point metals generally, and is not limited in use solely to metals which "necessarily are largely composed of lead."

The clause just quoted is relied upon by appellants to establish that Newton's die is restricted in use solely to low melting point metals such as lead alloy. That clause is not susceptible, however, to the interpretation upon which appellants rely for the reason that it is directed only to the mak-

ing of toys for which cheap and low melting point metals are required and for which Newton states his die is especially applicable.

Appellants argue that Newton defines a die made out of zinc or aluminum, both of which are metals having a higher melting point than that of the metals to be cast, and that Newton admonishes any person skilled in the art not to employ a metal for the die which contains the same metal that is employed in making the casting in the die, "even though the oxide coating is employed."

The difficulty with appellants' argument is that it is based upon a misapplication of Newton's disclosure.

Newton, as hereinbefore described, states that in the making of toys of low melting point metals, which "necessarily are largely composed of lead," it is important to use an alloy for manufacturing the die which contains practically no lead or tin, as the presence of such metals in the die would tend not only to cause the surface of the die to blister but also tend to cause the lead and tin in the die to alloy with the lead and low melting point metals used in the casting of the toys.

There is nothing in the disclosure of Newton, however, that supports the statement of appellants that such blistering of the die and the alloying of the metals will occur "even though the oxide coating is employed." On the contrary, Newton discloses that if the surface of the die is provided with the oxide coating as described by him it will protect the die and prevent possible alloying therewith of the metal being cast.

Appellants contend that a patentable distinction is defined by their claims over the disclosure of Newton due to the fact that Newton teaches the use of an oxide coating as a heat insulator whereas appellants have fully established by actual tests that in the practice of the claimed process the oxide coating serves not as a heat insulator but as a heat conductor.

■ There is nothing in the record which establishes that the particular metal employed has anything to do one way or another with the conductivity of the claimed coating in the casting of metals. In any event, Newton discloses the same coating and, as correctly pointed out by the Solicitor for the Patent Office, it is immaterial whether or not Newton understood the principle upon which the coating operates, citing Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049.

Appellants contend that they have established by a proper showing in the record that the practice of the claimed process results not only in an increased output and a material saving in costs but also in aluminum castings having characteristics or qualities of utility that are new and materially different from the aluminum castings produced according to practices previously known in the art.

■ The affidavits upon which appellants rely to establish superiority of the claimed process show that sand and iron molds were employed by appellants in conducting comparative tests. It cannot follow that such tests thereby disclose a superiority which Newton does not likewise disclose.

It is further urged that the disclosure of the patent to Newton does not anticipate the process defined by the appealed claims and is therefore not pertinent as a reference, citing Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L. Ed. 968, and other authorities.

The steps recited by the appealed claims are the conventional steps of melting and pouring the molten metal into the cavity of a coated mold and thereby casting such metal. The novelty chiefly relied upon by appellants is that the mold is made out of the same material as the metal to be cast.

■ The disclosure of the patent to Newton suggests the use of an aluminum mold coated with the same coating that is employed by appellants. Appellants have failed to establish that Newton's mold in its normal and usual operation will not perform the same function that is performed by the process defined by the rejected claims. Therefore the use of aluminum in the aluminum mold of Newton does not involve a patentable distinction. In re Ernst, 150 F.2d 133, 32 C.C.P.A., Patents. 1106.

Appellants allege that the outstanding merits of the claimed process have been recognized and practiced on an extensive scale in the United Kingdom and in other countries. Since appellants have failed to show that the claimed process is patentable over the art of record, the question of commercial success is immaterial. In re Irmscher, 150 F.2d 705, 32 C.C.P.A., Patents, 1259.

Other and subordinate questions raised by appellants do not require statement and discussion in this opinion. Inasmuch as the appeal as to claim 21 has been withdrawn, the appeal with respect to that claim is hereby dismissed; and since the record fully warrants the action of the board in rejecting claims 23 and 24, its decision in so doing is accordingly affirmed.

Affirmed.