**Application of James Rowland HOTCHKIN.**

**Patent Appeal No. 6081.**

United States Court of Customs and Patent Appeals.

June 28, 1955.

Ramsey, Chisholm & Hilder, New York City (Charles F. Chisholm, New York City, and C. Willard Hayes, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 1 to 6, inclusive, and claim 8 of appellant's application, Serial No. 33,995, for a patent on a "Nut-and-Bolt Organization and Nut therefor" on the ground of lack of invention over the prior art. Claim 1, 2, and 5 are illustrative and read:

"1. A one-piece lock nut of springy sheet steel, hardened and tempered; said nut comprising: an upstanding annular body portion of hexagonal form providing six wrench faces; an upwardly-domed web extending inwardly from the top of the

body portion, the web being provided with a centrally-located bolt-receiving hole and the sheet metal around the hole being formed as a self-locking thread engager; and a circumferentially-continuous conical rim extending outwardly and downwardly from the bottom of the body portion, the rim being homogeneous with the body portion and having a smooth unbroken bottom surface and a circular outer edge, the rim extending outwardly from the wrench faces for a distance equal to about seven times the thickness of the sheet steel of which the nut is made and the downward inclination of the rim being about 10°, and the rim being sufficiently yieldable in an axial direction to spread out flat when the nut is screwed home against a work piece by torque which is less than that which would cause overloading of the sheet metal thread engager, and the rim being sufficiently springy to exert resilient holding pressure opposing loosening of the nut.

"2. A one-piece lock nut of springy sheet metal, said nut comprising: an upstanding annular body portion provided with a series of wrench faces; an upwardly-domed web extending inwardly from the top of the body portion, the web being provided with a centrally-located bolt-receiving hole and the sheet metal around the hole being formed as a self-locking thread engager; and a circumferentially-continuous conical rim extending outwardly and downwardly from the bottom of the body portion, the rim being homogeneous with the body portion and having a smooth unbroken bottom surface and a circular outer edge, and the rim being sufficiently yieldable in an axial direction to spread out flat when the nut is screwed home against a work piece by torque which is less than that which would cause overloading of the sheet metal thread engager, and

the rim being sufficiently springy to exert resilient holding pressure opposing loosening of the nut.

"5. An assembly comprising: a pierced work piece; a bolt passing loosely through the work piece leaving large space between the shank of the bolt and the work piece; and a one-piece nut of springy sheet metal threaded onto the bolt and screwed home against the work piece, the nut covering the space between the shank of the bolt and the work piece and having a circumferentially-continuous initially-conical rim which is homogeneous with the body of the nut and which extends outwardly and downwardly, the outer edge of the rim being in engagement with the work piece, and the rim being axially stressed and spread out flat against the work piece and exerting resilient clamping pressure on the work piece."

Appellant's application discloses a self-locking sheet metal nut having a hollow hexagonal upper portion adapted to be engaged by a wrench, and provided with a hole through which a bolt may be passed, the metal around the edge of the hole being distorted into a helical form corresponding with one convolution of the thread of the bolt with which the nut is to be used, and constituting a self-locking thread engager. At its lower end the hexagonal portion of the nut merges into an outwardly flaring conical rim which, in the preferred form, has a width approximately seven times the thickness of the metal of which the nut is made, and which extends at an angle of about ten degrees to a plane perpendicular to the axis of the bolt.

In the embodiment illustrated in the application, the nut is used in clamping a work piece to a support. The support and work piece are provided with registering openings through which a bolt is passed, the diameter of the bolt being small enough to permit the bolt to pass loosely through the openings, with the head of the bolt, which is larger than the openings, engaging the portion of the

support surrounding the opening. The nut is threaded onto the end of the bolt which protrudes beyond the work piece and is screwed down until the conical rim engages the work piece, after which further turning of the nut causes the rim to flatten out in the form of a disk. In that position the rim exerts a force on the work piece which provides a secondary lock against turning and, because of the resilience of the rim, it is stated that the force will be maintained despite wear or shrinkage of the parts secured by the nut and bolt.

The references relied on are:

"Blois (French), 721,806, March 8, 1932; Winchester et al. (Reissue), 19,492, March 5, 1935; Beggs 2,284,081, May 26, 1942; Thompson, 2,347,852, May 2, 1944; Gullbrantz (French), 903,928, October 22, 1945."

The principal reference relied on below is the patent to Beggs which discloses a sheet metal lock-nut having an upper hexagonal portion provided with a central opening, and a bolt-engaging portion similar to those of the nut of appellant's application, and merging at the bottom into a flat circular rim which surrounds the hexagonal portion and which, as shown in the drawing, has a width approximately four times the thickness of the metal of which the nut is made.

The secondary references relied on are the patents to Winchester et al. and the French patent to Blois. Each of those patents discloses a solid hexagonal nut having a flaring skirt permanently united to its lower portion. The skirts are resilient and, when the nuts are tightened on bolts in assembling parts, they engage one of the parts and are compressed between it and the nut to provide a locking action. The skirt of the Blois device is described as being in the form of a "spherical zone," but its shape, as shown in the drawing, is approximately frusto-conical, as is also true of the Winchester skirt. In our opinion the term "conical," as used in the appealed claims,

reflects no material distinction over the skirts shown by those references. It does not appear that the skirt of either Blois or Winchester is so designed as to be completely flattened, when clamped in position, as is the rim or skirt of appellant's nut.

The patent to Thompson and the French patent to Gullbrantz were cited as showing it to be old to form the resilient conical portion of a sheet metal locking nut as an integral portion of the nut.

The Board of Appeals was of the opinion, and we think correctly so, that in view of the showing of generally conical skirts on lock-nuts by Winchester, Blois, Thompson, and Gullbrantz, with the skirts in the last two patents being integral with a sheet metal nut, there would be no invention in imparting a conical shape to the flat circular flange of Beggs.

The advantage of a resilient flange of generally conical shape is clearly recognized in the four subsidiary references, and the broad idea of applying such a feature to any prior art lock-nut would not be a matter of invention. It seems to us that the obvious manner of applying it to the Beggs nut would be to form the conical flange integral with the bottom of the hexagonal portion, just as the flat flange of Beggs and the flared skirts of Thompson and Gullbrantz are formed. Even if it be conceded that such would result in a device having unexpected advantages, invention would not necessarily be involved, since a patent may not properly be granted on the basis of a result which would flow naturally from the teachings of the prior art. In re Kepler, 132 F.2d 130, 30 C.C.P.A., Patents, 726. We think it follows that any claim which fails to patentably distinguish over the Beggs structure, as so modified, is not properly allowable.

It is appellant's contention, based on an affidavit showing comparative tests, that the nut disclosed in his application produces new and unexpected results and has met with great commercial success, out-selling the Beggs nut by more than

three to one, even at a price forty per cent higher. Those tests and sales appear to relate to the preferred embodiment disclosed in the application, in which the flange extends at an angle of approximately ten degrees to a plane perpendicular to the axis of the bolt, the only angle mentioned in the application, and has a width about seven times the thickness of the metal of which the nut is made. It seems to us that such specific construction would inherently result in flattening out the flange against the article being clamped under a resilient holding pressure. That feature, together with the wide flange and the other structure recited, is not, in our opinion, fairly anticipated by the suggested modification of Beggs in view of the other references.

■ The question of patentability as to claim 1 is a close one, since the exact proportioning of the nut would, as suggested by the Patent Office tribunals, normally be a matter of engineering design. However, in view of the fact that the specific nut disclosed by the application has been shown to possess unusual advantages and to have enjoyed great commercial success, we resolve the doubt in his favor and hold that appellant is fairly entitled to protection on that specific nut. However, in view of the similarity between that nut and the prior art, the protection accorded should be limited to the specific embodiment which has been shown to produce the results in question. Appellant should not be allowed claims covering materially different structures which have not been shown to have any particular advantages. In our opinion, claim 1 is commensurate with the scope of appellant's inventive contribution and affords proper protection therefor.

■ Claims 2, 3, 4, and 8 vary in scope, but all of them are broader than claim 1, and are not limited to the particular structure which has proved so successful. Thus, claims 2 and 3 do not specify the width of the flange nor the angle at which it extends, and accordingly would not distinguish from the Beggs nut if the flange of that nut were given a conical shape as suggested above. The statement in those claims that the flange or rim is sufficiently yieldable to spread out flat under a torque which would not overload the thread-engaging portions of the nut is, in our opinion, merely functional and defines no positive structure. Moreover, we doubt that relationship alone would produce the result claimed. It is only when the slope of the flange is such that it will be flattened by the normal tightening torque that the peculiar locking action relied on is achieved. The physical possibility of flattening the flange without stripping the thread-engaging portions is not, of itself, a patentable idea.

Claim 4 adds to what is recited in claims 2 and 3 the statement that the rim is "of small slope," and that the flange is at least four times the thickness of the metal of which the nut is made. The latter feature, as noted above, is substantially disclosed by Beggs, while the reference to a "small slope" is not sufficiently definite to constitute a patentable limitation.

Claims 5 and 6 are drawn to an assembly comprising a work piece, a bolt passing through it, and a nut threaded onto the bolt. Claim 5 also states that there is a large space between the shank of the bolt and the work piece. Such an assembly is obviously conventional and, as pointed out by the examiner, appellant concedes the assembly to be old except for the particular nut used. The examiner further held that there would be no invention in using the Beggs nut in an assembly of the kind recited in claims 5 and 6. That holding appears to be sound, since there would be no invention in using just any type of nut desired in the assembly claimed.

Claim 8, like claim 1, states that the width of the flange is seven times its thickness, but instead of fixing the slope at ten degrees with respect to a plane perpendicular to the bolt axis, it merely calls for a "small slope," and, in our opinion,

**494**

is too indefinite, even with the wide flange recited, to patentably distinguish over the references.

The Board of Appeals did not refer specifically to Claims 5 and 6, but entered a general affirmance of the examiner's action. The latter held that those claims merely involved an obvious use of the nut structure defined in the remaining claims, which he considered unpatentable. He further held that the use of the Beggs nut as disclosed "would solve the same problem" as appellant's nut.

It is true that claims 5 and 6 state that the rim portion of the nut is spread flat and exerts resilient pressure on the work piece, which feature is not expressly disclosed in the references, but, as broadly defined in those claims, this is no more than a matter of degree. The claims do not state how wide the rim is nor the slope of its original conical taper. It is accordingly considered that they fail to distinguish patentably from the Beggs device, as modified, to include a conical flange.

Moreover, as pointed out by the examiner, if the Beggs nut, as disclosed, were used in a conventional work piece assembly, its rim would lie flat against the work piece and would span the space around the bolt. It would also exert a clamping pressure when the nut was tightened. The reference to that pressure as "resilient" in claims 5 and 6, is functional, and, in our opinion, too indefinite to distinguish over Beggs. The statement that the rim was "initially conical" at some unspecified time in the past defines no structure and cannot be relied on for patentability. We do not see how those claims define invention over the prior art.

For the reasons given, the decision of the Board of Appeals is modified, being reversed as to claim 1, and affirmed as to claims 2 to 6, inclusive, and claim 8.

Modified.

JOHNSON, J., dissents as to the allowance of claim 1.