**44 C.C.P.A.** (Patents)

**Matter of the Application of Otto EISENHUT.**

**Patent Appeal No. 6274.**

United States Court of Customs and Patent Appeals.

June 17, 1957.

**482**

Ernest G. Montague, New York City (John M. Mason, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, RICH, and JACKSON (retired), Judges.

JOHNSON, Chief Judge.

This is an appeal from a decision of the Patent Office Board of Appeals, affirming the examiner's rejection of claims 19, 23 and 25 to 33 as unpatentable over the prior art, in appellant's application serial No. 217,879, filed March 27, 1951, for "Process for the Manufacture of Washable, Cloth-Like Material From Cellulose Fibres Without Spinning or Weaving." The foregoing claims are the only claims remaining in the case.

At oral argument, counsel for appellant admitted that the essence of his alleged invention was set forth in claim 19; that the ancillary details included in claims 23 and 25 to 33 added nothing of patentable moment to the basic process otherwise set forth in those claims; and that, therefore, claims 23 and 25 to 33 would necessarily stand or fall together with claim 19. We will, accordingly, restrict our discussion to the latter claim, which reads as follows:

"19. A process for the production of a firm washable material resembling woven cloth without spinning or weaving from carded fleece, at least the greater part of the entire fleece consisting of regenerated cellulose fibers, consisting of the steps of passing the said fleece through a lye bath containing from 5% to 15% NaOH at a temperature of from −5°C to +25°C for five seconds up to one minute and neutralizing, rinsing, and drying the said material."

The alleged invention relates to a process of preparing a felted material resembling woven cloth from a carded fiber fleece, the greater portion of which consists of regenerated cellulose fibers,[1] with or without natural fibers, such as cotton or the like. The process involves treating a layer of the fibers with an aqueous solution of caustic soda of a stated strength for a stated time at a stated temperature. These conditions are set forth in claim 19, *supra*. The treated fibers are then neutralized, rinsed and dried.

The references relied upon are:

| | | | |
|---|---|---|---|
| Prevost | 615,045 | Nov. 29, | 1898 |
| Hahn | 1,757,755 | May 6, | 1930 |
| Schwartz I | 1,757,756 | May 6, | 1930 |
| Tagliani | 1,776,052 | Sept. 16, | 1930 |
| Schwartz II | 1,791,248 | Feb. 3, | 1931 |
| Weiss | 2,203,375 | June 4, | 1940 |
| Secrist | 2,528,793 | Nov. 7, | 1950 |

---

1. The board was of the opinion that the term "regenerated cellulose fibers" is inclusive of the usual forms of rayon produced from viscose. Appellant does not dispute this statement and, in fact, refers to the material used as "viscose" in his brief. We will, therefore, accept this interpretation as correct.

The board, in its rejection, held claim 19 unpatentable over Schwartz II or Secrist, each in view of Tagliani. The other references were applied against the remaining claims (in addition to the Schwartz II, Secrist and Tagliani references) merely for their showing of the ancillary details included in those claims. Since, as we have stated, it is only necessary to consider claim 19, these other references will not be further discussed. Also, in the view we take of this case, it is not necessary to discuss the teachings of the Schwartz II patent.

The Secrist patent discloses a process for producing a felted cotton fiber textile material. The fibers are first arranged by a carding operation, and then treated with an aqueous solution of caustic soda of from 8% to 30% concentration, at a temperature from just above the freezing point of the solution to +25°C, for a period of from ½ to 3 minutes. The treated fiber is then washed, neutralized and dried. Secrist states that it is preferred that the fibers be cleaned by boiling and bleaching prior to the caustic treatment. He also sets forth preferred conditions of 10% to 18% for the concentration of the caustic solution and a temperature range of from −10°C to +15°C. He states that the fiber to be treated may not only consist of cotton fibers alone but of mixtures of cotton fibers and other materials, such as regenerated cellulose, with the former serving as the main structure.

The Tagliani patent, insofar as pertinent, discloses a mercerizing process for treating natural and artificial cellulosic fibers with mixtures of caustic soda, a phenol and a hydrogenated aromatic compound. Several examples are set forth, one in which a cotton fabric is treated, another in which a viscose fabric is treated. The examples show the use of a 20°Bé (15%) caustic solution for the latter and a 36°Bé (30%) caustic solution for the former.[2]

The board stated that Secrist discloses a treatment with aqueous alkali under conditions which include those conditions set forth in claim 19. The board conceded that Secrist does not disclose the substitution of regenerated cellulose for a greater part or all of the cotton fibers primarily recommended although it noted that Secrist does disclose the addition of regenerated cellulose to the cotton fibers. It was of the opinion that the disclosure of Tagliani (the two examples heretofore mentioned) is sufficient to suggest moderation of the alkaline treatment of Secrist when employing regenerated cellulose in lieu of cotton fibers. It further took note of a statement in affidavits filed on appellant's behalf by one Helmut Zahn, a Professor in Chemistry at the Chemical Institute of the University of Heidelberg, to the effect that the greater sensitivity of regenerated cellulose than natural cellulosic materials, such as cotton, to alkali is a matter of common knowledge in the art. In the light of the Tagliani teachings and the concessions made in the Zahn affidavits the board was of the opinion that no invention would reside in the substitution of regenerated cellulose for the cotton fibers of Secrist.

Appellant takes issue with the board and contends that the ranges of caustic concentration, time of treatment and temperature set forth in claim 19 are critical; that regenerated cellulose is much more sensitive to caustic than the cotton fibers of Secrist and that, therefore, one using the upper ranges of Secrist with respect to time of treatment and temperature of regenerated cellulose fibers would destroy the fibers; that even if the preferred ranges of Secrist are used, his maximum preferred concentration is 3% greater than appellant's maximum concentration and that regenerated cellulose would be destroyed by such a concentration of caustic soda; that the preliminary cleaning of the fibers by

**2.** The conversion figures from °Bé to % were set forth in the brief for the Solicitor and were obtained from Lange's Handbook of Chemistry (6th Ed.), p. 1303, of which we take judicial notice.

boiling and bleaching preferred by Secrist would as well destroy regenerated cellulose; that Tagliani's teachings are erroneous in that they do not make any distinction between natural and regenerated cellulose fibers with respect to their treatment with caustic (as the affidavits of Zahn say must be made) and that, therefore, Tagliani is not a valid reference *against* claim 19; that Tagliani does not subject regenerated cellulose fabric to caustic soda alone but, rather, in the presence of phenols and other organic substances and that his teachings do not therefore demonstrate the effect of caustic soda on regenerated cellulose.

Appellant concludes his argument with a belated contention (it was first made at oral argument) that the teachings of Tagliani may not be combined with those of Secrist since Secrist is concerned with the treatment of *fibers* whereas Tagliani applies his mercerizing process to fabrics[3] and that the problems involved with respect to each are vastly different. It should also be noted that appellant has introduced into the record, in addition to the Zahn affidavits, the English translation of an article from a German publication entitled "Melliand Textilberichte,"[4] to demonstrate that regenerated cellulose cannot be subjected to the same alkali treatment as cotton fibers.

We have carefully digested appellant's arguments and given careful consideration to the Zahn affidavits and the German article but have nevertheless come to the conclusion that the decision of the board must be affirmed.

Considering first the Tagliani reference, we are of the opinion that appellant's arguments are not well taken. His contention to the effect that Tagliani's teachings are erroneous *apparently stems* from the examiner's statement that Tag-

liani was cited to show "that natural forms of cellulose (cotton) are equivalent to or art (sic) recognized substitutes for regenerated cellulose in alkali treatments." Whether or not the examiner meant that no differentiation should be made between the treatment of regenerated cellulose and cotton with caustic is immaterial. The Tagliani reference does show that, *in general,* regenerated cellulose (or viscose) and cotton may be subjected to similar caustic treatments. Tagliani does recognize, however, that, though each of these materials may be mercerized, a lesser concentration of caustic must be used with viscose than with cotton. This is illustrated by the examples set forth by Tagliani. Thus, Tagliani's teachings do not conflict with the statements in the Zahn affidavits. That Tagliani adds to his treating solution phenols and other organic materials does not detract from the value of his teachings as to the use of caustic on cotton and viscose and the difference in treatment of each of those materials.

Appellant's assertion relative to the use of fibers as distinguished from fabric is tenuous. In the first place, we are not aware that a teaching with respect to the action of caustic on fabric would not be available as against the use of caustic on individual fibers. If there is a difference between the effects of the two types of treatments appellant has not demonstrated it. Secondly, we are not convinced that Tagliani intended to restrict his teachings to *fabrics.* Contrary to appellant's arguments, mercerization is not restricted to fabrics. Not only does Webster refute this argument[5], but the original disclosure of the English patent to Mercer[6] does so as well.

Thus, we are of the opinion that Tagliani stands, in general, for the teaching

3. Appellant, in support of this argument, notes that Tagliani uses a mercerizing process, which process appellant contends, can only be used on fabric (as distinguished from fibers) since mercerizing relates only to treatment of the surface area of material.

4. 1936, page 804.

5. In Webster's New International Dictionary, 1932 Edition, "mercerize" is defined as follows:
   " * * * To treat (cotton *fiber* or fabrics) with a solution of caustic alkali. * * * " (Emphasis added.)

6. John Mercer's Specification, No. 13296, 1850, *is set forth in part at pages 3–5 in Vol. 1 of a set of books entitled*

that caustic treatment may be applied not only to cotton but to viscose materials as well, the concentration of caustic with respect to the latter being of lesser strength than with respect to the former.

We are accordingly of the opinion that it would not involve invention to substitute regenerated cellulose for the cotton of Secrist. One making this substitution would, in accordance with the teachings of Tagliani, as well as the concessions made by Zahn, be apt to employ conditions at the lower limits of the Secrist ranges. Determination of the specific ranges of conditions desirable would require no more than simple experimentation by the skilled artisan. The other steps set forth in claim 19, washing, neutralizing and drying, are clearly set forth by Secrist.

█ It is worthy of note at this juncture that though appellant has directed much of his energy towards his assertions that the specific limits set forth in claim 19 are critical, he has made no positive showing in the way of evidence that his limits are as "critical" as he asserts them to be. We find nothing in the Zahn affidavits to establish the criticality of his limits. Indeed, the German article which he has introduced into the record indicates that where a mixture of regenerated cellulose and cotton yarns is treated with a caustic soda solution of 27–30°Bé (21%–24%) concentration at a temperature of 18°C "little danger for cell wool [regenerated cellulose] lies in this normal mercerization concentration." And this concentration is greater than the 15% which appellant claims is critical. It is well established that unless allegations of criticality are supported by

actual proof, they cannot be given any weight. In re Swenson, 132 F.2d 1020, 30 C.C.P.A., Patents, 809, 813; In re Selmi, 156 F.2d 96, 33 C.C.P.A., Patents, 1187, 1190; In re Greider, 129 F.2d 568, 29 C.C.P.A., Patents, 1079. Appellant as well, has failed to back up his assertions that Secrist's preliminary boiling and bleaching would destroy regenerated cellulose. His bare, unsupported statement to this effect is inadequate.

In our consideration of this case we have, as we have stated, given due weight to the statements in the two Zahn affidavits as well as to the German article. The German article merely teaches that the effect of caustic soda solutions may be more deleterious within certain concentration ranges on regenerated cellulose than on cotton and that care must be taken in washing treated regenerated cellulose. It also states that "cell wool [regenerated cellulose] mercerized in caustic soda solution corresponds in no way to the cotton mercerized in caustic soda solution." As has been heretofore stated, however, Tagliani recognizes that viscose is more sensitive to caustic than is cotton. This, as well, is corroborated by the Zahn affidavits. And that the *product* obtained from the treatment of regenerated cellulose with caustic differs from that obtained by similar treatment of cotton does not detract from the effect of Tagliani's teaching to the effect that, *in general*, viscose and cotton may be subjected to treatment with caustic.

Nor do the statements in the Zahn affidavits alter our conclusions. The comparative tests set forth in the first affidavit were allegedly conducted under the conditions set forth in Schwartz II.[7]

"Mercerisation" by the editors of "The Dyer and Calico Printer," published by Heywood and Co. Ltd., London (1903), a copy of which is in the C.C.P.A. Library.

The specification reads, in part, as follows:

"My invention consists in subjecting vegetable fabrics and *fibrous* materials, * * * to the action of caustic soda * * *. (Emphasis added.)

      *      *      *      *      *

"When I apply my invention to any *fibre* in the raw state, or before it is

manufactured * * *." (Emphasis added.)

7. Though affiant's comparative tests were conducted on the basis of the conditions set forth in Schwartz II, which patent we have not found it necessary to consider in view of our use of Secrist, we are, for purposes of this opinion, giving appellant the benefit of the doubt by assuming that the Zahn statements are equally applicable to the Secrist teachings.

It is obvious that these tests are inadequate inasmuch as the treatment time in the tests was 5 *minutes* whereas Schwartz II sets forth a treatment time of 5 *seconds*. Affiant, in fact, admits that the conditions used in his tests were much more severe than those used by Schwartz II. Such comparative tests are not competent. In re Parlanti, 158 F.2d 1018, 34 C.C.P.A., Patents, 803, 807. The comparative tests set forth in the second affidavit were confined to the conditions used by Schwartz II (which conditions were also within the ranges set forth in appellant's claim 19) but merely demonstrated that the product obtained by treatment of viscose rayon with caustic soda was not as good as that obtained by similar treatment of cotton. Affiant concluded from these tests that "it could not be expected to produce a firm washable material from a fleece of regenerated cellulose fibres in an 8% alkali solution at a temperature range of from −5° to +25°C in view of the high loss of tearing strength and consequently Dr. Eisenhut's teaching in the said application for United States letters patent must be considered as unexpected and surprising to the man skilled in the art." As we have said, we are of the opinion that the Tagliani teachings suggest the application of the Secrist process, as well as the possible modification thereof, to treatment of viscose materials, and we have not been shown that unexpected results were in fact obtained. Appellant cannot claim to be the inventor of a result that would flow naturally from the application of the teachings of the prior art. In re Kepler, 132 F.2d 130, 30 C.C.P.A., Patents, 726; In re Gauerke, 86 F.2d 330, 24 C.C.P.A., Patents, 725.

█ We are therefore of the opinion that the board's rejection of claim 19 must be affirmed. For reasons heretofore set forth, claims 23 and 25 to 33 are, as well, unpatentable over the cited art.

Affirmed.

WORLEY, J., because of illness, was not present at the argument of this case, but, by agreement of counsel, participated in this decision.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.