**306**

Andrew B. Beveridge and Joseph A. De Grandi, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and WORLEY and RICH, Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the Primary Examiner's rejection of claims 18, 19, 20, 21, and 26 of appellant's application No. 12,657 for a patent on a structural building unit and method of making the same, on the ground of lack of invention over prior patents. No claims have been allowed.

Claims 18, 20 and 26, which are representative of the appealed claims, read as follows:

"18. Method of making structural building units, comprising the steps of providing a continuously impervious, thin refractory metal enclosure wall, determinative of the outer size and shape of the unit and of a completely enclosed hollow chamber therein, provided with a small pouring opening only through said wall, pouring a freely liquid dispersion of finely divided reactive lime and finely divided reactive sili-

45 C.C.P.A. (Patents).

**Matter of the Application of Hubert W. PAUL.**

**Patent Appeal No. 6323.**

United States Court of Customs and Patent Appeals.

Jan. 31, 1958.

ceous material in substantially the proportions of 1.0 CaO to 1.0 SiO₂ in water, having a water to solids dispersion ratio of at least 7 to 1, to 26 to 1, by volume, through said opening into the hollow chamber, continuously to wet the entire inner surfaces of said enclosure and in an amount sufficient completely to fill the enclosed chamber therewith, effecting reaction of the reactive lime and reactive siliceous material to calcium silicate, at a temperature and pressure above the normal boiling point of water, thereby to react and form and integrate the resulting calcium silicate monohydrate reaction product throughout the volume occupied by the liquid dispersion initially charged therein, and further heating the same, thereby completely vaporizing the residual water component from the porous mass, the resulting water vapor passing through said opening from the hollow chamber, whereby all of the water vapor component migrates through the porous integrated charge to the opening and is eliminated therethrough and from the chamber.

"20. A structural building unit comprising a continuous, impervious, thin refractory metal enclosure wall, determinative of the outer size and shape of the unit and of a completely enclosing chamber therein, and an inner body portion conforming intimately to the inner surface of the enclosure wall and uniformly filling the entire chamber, characterized by an integrated porous structure having a ratio of voids to solids of at least 7 to 1, to 26 to 1, by volume, and composed of calcium silicate monohydrate, having a molecular composition of 1.0 CaO to 1.0 SiO₂, free from water, and resistant to high temperatures and to the transmission of heat therethrough.

"26. The method of making a structural building unit characterized by high tensile and compressive strength, resistance to high temperatures, resistance to the conductivity of heat at low and high temperatures, resistance to distortion and of low apparent density and weight, comprising, the steps of pouring into a continuously impervious, thin refractory metal enclosure wall, determinative of the outer size and shape of the unit and of a completely enclosed hollow chamber therein and provided with a small pouring opening only through said wall, a freely liquid dispersion of finely divided reactive lime and finely divided reactive silica particles in substantially the proportions of 1.0 to CaO to 1.0 SiO₂, and finely divided and dispersed fibers selected from the group consisting of asbestos fibers, cellulose fibers and mixtures of the same, in water, having a water to solids dispersion ratio of at least 7 to 1, to 26 to 1, by volume, to continuously wet the entire inner surfaces of said enclosure and in an amount sufficient to fill the enclosed chamber therewith, further subjecting said enclosure wall and said dispersion therein to a temperature of substantially 100° C at a steam atmosphere of 50 to 75 pounds pressure per square inch for a period of 15 hours, thereby to react and form and integrate the resulting calcium silicate monohydrate reaction product throughout the entire volume occupied by the liquid dispersion initially charged therein, then gradually increasing the temperature of said structural unit, so as to completely vaporize the residual water component of the porous mass, the resulting water vapor passing through said opening from the hollow chamber, whereby all the water vapor component migrates through the porous integrated charge to the opening and is eliminated therethrough and from the chamber."

The references relied on are:

| Torstensson | 2,128,336 | Aug. 30, 1938 |
| Fraser | 2,469,379 | May 10, 1949 |
| Serinis | 2,534,303 | Dec. 19, 1950 |

Appellant's application discloses a method of making a structural unit which comprises providing a hollow refractory metal shell having the size and shape of the desired unit and having a small opening through one wall, and filling the shell with a freely flowing dispersion of lime and silica in water, to which may also be added fibers of a material such as asbestos or cellulose. The dispersion is then subjected to pressure and to a temperature above the boiling point of water so that the lime and silica react to form calcium silicate monohydrate, and the unit is then further heated to vaporize and drive off the residual water. The specification states that the ratio of reactive lime to reactive silica is preferably from .8 to 1 to 1 to 1, and that the water to solids ratio should be greater than 2.5 to 1 by weight or 7 to 1 by volume, and may advantageously be as high as 9.3 to 1 by weight or about 26 to 1 by volume.

The Torstensson patent relates to a method of producing an insulated element which comprises providing a hollow metal shell of the desired shape, having a small opening in one wall, filling it with a sludge of finely divided insulating material such as siliceous guhr and water, heating the element in an oven and drawing off the vapor by means of a pump. After a desired degree of vacuum has been produced the element is sealed. No chemical reaction is involved in this process.

The Fraser patent discloses the preparation of molded insulating articles by flowing a mixture of lime, silica, asbestos, diatomaceous earth and water into a mold, subjecting it to heat and pressure in a steam atmosphere so that a reaction between the lime and silica takes place, cooling, removing from the mold and drying, leaving a product in the form of the mold. In an example relied on by the board, Fraser uses a lime-silica ratio of 6 to 5 by weight and a liquid-solids weight ratio of 5 to 1, as was pointed out by the examiner. Fraser also suggests the possibility of using lime and silica in the dispersion without the use of additional fibers.

The Serinis patent discloses a process which, so far as pertinent to the present appeal, is essentially the same as that of Fraser. Serinis, therefore, is merely cumulative and need not be considered in detail.

The appealed claims were rejected on Torstensson in view of Fraser, on the ground that it would not require invention to replace the sludge of the former patent by the reactive mixture of the latter, and that such a substitution would produce what is called for by the appealed claims or the full equivalent thereof.

We agree with the Patent Office tribunals that the proposed substitution of materials would not be inventive. Torstensson clearly discloses the idea of forming a composite insulating member by flowing a sludge into a hollow form and removing the liquid. It is not material, so far as that basic concept is concerned, what specific materials are used in the sludge, and it would readily occur to persons skilled in the art that any other suitable insulating material might be substituted for the siliceous guhr used by the patented. The advantages of Torstensson's process and article are apparent and are independent of the specific insulating material used. All that is necessary is that such material should be capable of being mixed with liquid to form a flowable sludge and that, upon removal of the liquid, it should form an effective solid insulating body.

The materials disclosed by Fraser are obviously of that character. They are capable of being poured or pumped into any desired mold or form and, upon being heated and dried, they form a solid insulating material. Fraser contemplates removing his material from the molds and using it in the form of blocks or other shapes but there is no apparent reason why such material could not be used in the manner disclosed by Tor-

stensson and allowed to remain permanently in the metal shell in which it is formed and dried.

Appellant states that Torstensson will use as little water as possible, since he must withdraw it through a small opening, and that Fraser, who uses a greater amount of water, removes his product from the mold for drying, so that a large surface is exposed. He contends that a person skilled in the art would consider this large exposed surface to be an essential part of Fraser's process and would conclude that the process could not be adapted for use with a form such as that used by Torstensson.

While Torstensson does not specify the amount of water which he uses, it is evidently substantial since it reduces the coarse granulated material to a relatively freely flowing condition. Assuming that Fraser uses a substantially greater amount of water, the difference is merely one of degree. While it might require a longer time, higher temperature or greater degree of vacuum to remove from Torstensson's form the amount of water employed by Fraser, we do not think that this would present any real or apparent difficulty which would discourage a skilled worker from combining the teachings of those two patents.

Appellant further asserts that there is no chemical reaction in the Torstensson process, that the casing will not be completely filled when the water is removed, and that the dry guhr remaining in the casing will shift its position whenever the casing is moved. However, the claims were not rejected on Torstensson alone but on a combination of that patent with the Fraser patent. Fraser states in his specification that his molded product, when dried, has the shape and dimensions imparted to it by the mold, and it thus appears that if Fraser's composition were used in the Torstensson process the form would remain completely filled after drying. This desirable result is inherent in the obvious combination of the references and hence does not confer patentability on the claimed combination. In re Gauerke, 86 F.2d 330, 24 C.C.P.A., Patents, 725; In re Kepler, 132 F.2d 130, 133, 30 C.C.P.A., Patents 726. As stated in the latter case:

> "A patent should not be granted for appellant's discovery of a result that would flow naturally from the teachings of the prior art."

Fraser, in one of the examples relied on by the board, discloses a water to solids ratio of 5 to 9 by weight, which is within the limits set forth in appellant's claims, and a lime to silica ratio of 6 to 5 which does not differ materially from the claimed ratio of "substantially" 1 to 1. Claim 26 specifies a particular temperature, pressure and time for the treatment of the material in the steam atmosphere, but it has not been shown that the claimed values are critical or that, as compared with the corresponding values in the Fraser process, they involve anything more than a routine selection.

Claims 18 and 20 recite lime and silica without additional fibers of asbestos or other materials but, as noted above, Fraser suggests the use of lime and silica without such other materials and accordingly patentability cannot be based on that feature.

We have carefully considered appellant's arguments, but are of the opinion that the Patent Office tribunals did not err in their conclusion that the appealed claims call for nothing more than an obvious combination of the teachings of the Torstensson and Fraser patents. The decision of the Board of Appeals is accordingly affirmed.

Affirmed.