**PERFECT CIRCLE CORPORATION,**
Plaintiff,

v.

**HASTINGS MANUFACTURING COM-
PANY,** Defendant.

Civ. A. 2011.

United States District Court
W. D. Michigan, S. D.

June 17, 1958.

Davis, Lindsey, Hibben & Noyes and Harry W. Lindsey, Jr., George N. Hibben, Chicago, Ill., and Frank E. Liverance, Jr., Grand Rapids, Mich., for plaintiff.

Earl & Webb and Otis A. Earl and Austin A. Webb, Kalamazoo, Mich., for defendant.

STARR, Chief Judge.

In its complaint in this case plaintiff alleged that it manufactured and sold piston rings known as Chrome Oil Stopper rings, which defendant claimed infringed its patent No. 2,565,042 issued August 21, 1951, on application filed May 17, 1948. Plaintiff denied that its rings infringed defendant's patent and alleged that all claims of the patent were invalid. It asked for a declaratory judgment (28 U.S.C.A. §§ 2201, 2202) determining defendant's patent to be invalid and not infringed and also for costs of suit and attorney fees. Defendant answered, alleging that plaintiff's Chrome Oil Stopper rings infringed its patent and denied plaintiff's right to the relief sought. In its counterclaim defendant alleged its ownership of said patent as assignee of the inventor, Harold P. Phillips; realleged its charge of infringement; and asked for an injunction against further infringement, for damages, costs of suit, and attorney fees.

In support of its claim of invalidity of patent because of lack of invention and prior-art anticipation, plaintiff cites the following patents and publications: Payne 1,600,961 issued September 21, 1926;[1] Fink et al. 1,956,014 issued April 24, 1934; Teetor 2,236,721 issued April 1, 1941; Engelhardt 2,281,873 issued May 5, 1942; Phillips 2,313,395 issued March 9, 1943; Van der Horst 2,367,159 issued January 9, 1945; Phillips 2,404,-862 issued July 30, 1946; French Patent 840,101 published April 19, 1939; advertisement, Simplex Products Corporation, October, 1945, issue of Motor magazine; advertisement, Simplex Products Corporation, October, 1945, issue of Southern Automotive Journal; and advertisement, Simplex Products Corporation, October, 1945, issue of Commercial Car Journal. Plaintiff further alleged in support of its claim of invalidity that the piston ring described in defendant's patent and all material parts thereof had, prior to invention and more than one year prior to the application for patent, been publicly known, used, sold, and on sale by plaintiff and its employees, distributors, and dealers at Hagerstown, Indiana, and elsewhere in the United States; by defendant, its employees, distributors, and dealers at Hastings, Michigan and elsewhere in the United States; and by Simplex Products Corporation[2] of Cleveland, Ohio, and its employees, distributors, and dealers.

The piston ring described in defendant's patent in suit and the plaintiff's accused piston ring are known as oil-con-

1. Payne 1,600,961 later withdrawn by plaintiff.

2. Now the Simplex Piston Ring Manufacturing Company.

trol rings and are for use on the pistons in the cylinders of internal-combustion engines. The specifications of the patent state that the invention relates to improvements in piston rings, and claims 1, 3, 5, and 7, which reasonably illustrate all claims, read as follows:

"1. A piston ring assembly comprising a pair of spaced relatively thin flat annular split cylinder wall engaging steel side elements and an annular split expansible spacer element intermediate said side elements, and an expander spring acting to force said side elements against a cylinder wall, said side elements having their cylinder wall engaging portions chrome plated, the chrome being plated on the steel, the cylinder wall engaging surface of the chrome plating being curved, the radius of the arc of curvature being not greater than one and one half times the axial thickness of a side member and not greater than .045 of an inch regardless of the axial thickness of the side member, to provide a relatively narrow hair-line contact between said chrome cylinder wall engaging surface and a cylinder wall and a relatively high unit of pressure of the side members against the cylinder wall and to provide relatively large oil pockets close to and on opposite sides of said narrow line of contact, said narrow line of contact and high unit of pressure facilitating on the initial operation of newly installed side members relatively close seating of the side members in the cylinder for effective oil control and effective sealing for increased piston pressure, and said relatively large oil pockets close to and on opposite sides of said narrow line facilitating increased lubrication at said narrow line of contact."

"3. A piston ring assembly comprising a pair of spaced expansible flat annular split cylinder wall engaging side elements, and an annular split expansible spacer element disposed between said side elements, said side elements having their cylinder wall engaging portions chrome plated, the cylinder wall engaging surface of the chrome plating being curved, the radius of the arc of curvature being approximately between one-half and two thirds the axial thickness of a side member but not greater than .045 of an inch regardless of the axial thickness of the side member to provide a relatively narrow hair-line contact between said chrome cylinder wall engaging surface and a cylinder wall and a relatively high unit of pressure of the side members against the cylinder wall and relatively large oil pockets close to and on opposite sides of said narrow line of contact."

"5. A relatively thin annular split expansible steel piston ring member having a curved chrome plated cylinder wall engaging surface, the chrome surface being plated on the steel, the radius of the arc of curvature of said surface being not greater than .045 of an inch regardless of the axial thickness of the member."

"7. An annular split expansible piston ring member having a chrome plated cylinder wall engaging surface, said chrome plated cylinder wall engaging surface being curved to provide a relatively narrow hair-line contact with a cylinder wall, said hair-line contact facilitating relative high unit pressure of the ring member against the cylinder wall and facilitating on initial operation of a newly installed ring member close seating of the same against the cylinder wall for effective oil control and seal pressure without drag or resulting high temperatures from friction."

The piston rings in the cylinder of an internal-combustion engine are generally referred to as compression rings and oil rings. The compression ring, located on the upper end of the piston has the dual function of sealing the gases in the com-

bustion chamber above the piston and controlling the oil in the cylinder. The next lower ring on the piston is generally referred to as an intermediate ring and serves both compression and oil-control purposes. The lowest ring is referred to as an oil ring, and its purpose in connection with lubrication is to keep the oil in the crankcase from passing into the combustion chamber in the cylinder. It appears that some types of piston rings may be used as either compression or oil rings.

■ The piston-ring assembly described in the claims of defendant's patent in suit consists of upper and lower annular, expansible, split, steel segments having cylinder-wall-engaging surfaces of chrome plate; an annular, expansible, metal spacer element located between the ring segments to maintain them in spaced relation; and a metal expander spring to force the ring segments outwardly toward the cylinder wall. It should be noted that the specifications of the patent in suit state that the spacer and expander elements in the piston ring were disclosed in inventor Phillips' prior patent 2,404,862. The annular, split segments are usually referred to as side rails, and the patent provides that the arc of curvature of the chrome-plated cylinder-wall-engaging surface of the side rails is not greater than one-and-one-half times the axial thickness of the side member and not greater than .045 of an inch, regardless of the axial thickness of the side member, to provide a relatively narrow hairline contact between the cylinder-wall-engaging surface and the cylinder wall. At this point it should be noted that the claims of the patent in suit do not specify any thickness or range of thickness of the chrome plating on the side rails. The specifications mention chrome plating "between .0005 and .006 of an inch in thickness, preferably about .004 or .005 of an inch," but as the patent claims measure the invention, the specifications cannot add to, enlarge or extend the scope of the claims. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402;

Aluminum Co. of America v. Thompson Products, 6 Cir., 122 F.2d 796, 798.

The plaintiff's accused Chrome Oil Stopper ring comprises the same elements of annular, split, metal segments referred to as side rails, a spacer element between the segments, and an expander spring to force the ring segments outwardly toward the cylinder wall. The curved face on the cylinder-wall-contacting surface of the rails is chrome plated. It appears that the spacer element in the patent in suit is formed from sheet metal, while the spacer in the accused ring is composed of cast iron. The principal difference between the rails in the patent in suit and the rails of the accused ring is that the chrome faces of the accused rings are either buffed to remove imperfections on the chrome without reducing its thickness, or lapped by a grinding operation to remove a small part of the chrome and flatten the circumferential central part of the curvature where the rails engage the cylinder wall.

The questions presented for determination by the court are: (1) Is the defendant's patent, Phillips 2,565,042, valid; and (2) if valid, are its claims infringed by plaintiff's accused ring? In determining the question of the validity of the patent in suit the court must consider the prior litigation between these same parties relative to piston rings. In 1939 the Hastings Manufacturing Company, defendant in the present suit, began actions in this court against the Automotive Parts Corporation and the Sealed Power Corporation, and Perfect Circle Corporation, plaintiff in the present suit, intervened in the first action as a party defendant. In 1940 the Hastings Company also began an action in this court against the Reed & Wiley Company. In each of those actions Hastings accused the defendant of infringement of its patent, Phillips 2,148,997 issued February 28, 1939, on application filed April 16, 1936, for a piston ring, and it should be noted that Harold P. Phillips, the inventor of the piston ring involved in those actions, is the inventor of the pis-

ton ring involved in the present suit. In each of those prior actions the late Judge Fred M. Raymond held the claims of the Hastings Manufacturing Company's patent in suit 2,148,997 to be invalid. See Hastings Mfg. Co. v. Automotive Parts Corporation, D.C., 39 F.Supp 319, and Hastings Mfg. Co. v. Reed & Wiley Co., D.C., 39 F.Supp. 328, both decisions affirmed, 6 Cir., 134 F.2d 404. It is important to note that the piston ring described in patent 2,565,042 now in suit, except for the addition of chrome plating, is essentially the same ring as that described in the prior Phillips patent 2,-148,997, which was held invalid by Judge Raymond in the former litigation between the same parties. This fact is clearly established by the testimony of inventor Phillips in the present action. He testified:

"The patent (now) in suit is essentially the ring of the earlier patent (Phillips 2,148,997) with a curved surface, and chrome, heavy chrome, * * * as an addition in this patent. The earlier patent does not show a curved steel section, although we did use curved steel sections when we made that ring, and still do. * * *

"The Court. * * * Am I right in saying that the only material difference which the court must consider as between the 2,148,997 patent involved in the 1941 litigation, and the patent in suit is the * * * chrome plating? * * *

"A. * * * The difference is mainly in the chrome plating, but just chrome plating would not be the thought in the invention, that is, just putting on chrome plating. The thought is chrome plating of the proper curve and the proper thickness to get the proper result, that was the invention.

"Q. But the ring involved in 2,-565,042 and the ring involved in 2,-148,997 were substantially the same ring outside of the plating element, is that right?

"A. * * * The ring we actually used in production was the same; the difference being the addition of the heavy chrome in the proper manner. * * *

"The Court. The ring actually in production at the time of the 1941 litigation, is essentially the same construction except for the chrome, as the ring introduced and considered in this suit?

"A. Yes, the ring in production at that time was essentially the same ring, if we leave off the chrome."

Inventor Phillips further testified that another of his earlier patents, 2,404,862 issued June 30, 1946, shows exactly the same piston ring as Fig. 1 of his patent in suit except for the chrome plating of the rails. Therefore, the issue as to the validity of patent 2,565,042 now in suit is narrowed down to the question as to whether the mere addition of chrome plating to the piston ring described in Phillips' prior patent 2,148,997, which had been held invalid, constitutes invention within the meaning of the patent law.

In explaining what he had attempted to accomplish by the patent in suit, Phillips testified: "There were engines and there were operating conditions where our so-called Steel-Vent ring, the ring of the earlier patent (2,148,997) did not accomplish for as long as we wanted it the oil control, which was its main function. That ring in most engines was very satisfactory, but in some heavy-duty engines * * * the ring was not durable enough, and we naturally thought of chrome as a means of increasing that durability. * * * Thin chrome would be cheaper to put on, but it did not last. It wore through between the break-in period and actual use, or sooner sometimes, so we were very sure that we must have heavy chrome, all the chrome that we could afford to put on, and all the chrome that a steel rail would stand."

The patent in suit issued in 1951 is an improvement patent in the crowded and

well-developed field of the piston-ring art. The chrome plating of piston rings had been shown in the prior art long before the application for this patent, and had been recognized and described by inventor Phillips in his prior patents and had been in use by the plaintiff, by the Simplex Products Corporation, and by other manufacturers. Inventor Phillips himself testified: "We were familar at that time with the Simplex (chrome-plated ring) structure; we watched it very carefully." The Fink patent 1,956,-014 issued in 1934 for a wearing part for internal-combustion engines, described a piston ring plated with chromium *"of the desired thickness."* Inventor Phillips' prior patent 2,564,993 issued August 21, 1951, on application filed September 27, 1946, nearly two years prior to his application for the patent in suit, described a piston ring with a curved, chrome-plated cylinder-wall-engaging surface. Another of inventor Phillips' prior patents, No. 2,436,227 issued February 17, 1948, on application filed June 16, 1944, nearly four years prior to his application for the patent in suit, described a piston ring having chromium-plated peripheral cylinder-engaging surfaces. Furthermore, inventor Phillips admitted that when he applied for the patent in suit, he knew of the existence of the Krome-Chek piston ring manufactured and sold by the Simplex Products Corporation of Cleveland, Ohio, in 1944 and thereafter, which had the curved or rounded edges of its cylinder-contacting rails chrome plated. It also appears that the so-called Triple Action piston ring manufactured and sold by plaintiff Perfect Circle about 1940 was chrome plated, and that the war-production rings referred to as Cadillac and Wright rings manufactured and sold by plaintiff in 1942 and thereafter were also chrome plated.[3] Advertisements by Simplex Products Corporation in the October, 1945, issues of Southern Automotive Journal, Commercial Car Journal, and Motor magazine showed chrome-plated piston rings. It further appears that prior to the application for the patent in suit, piston rings had been manufactured and sold which had the same rail-edge curvature and chrome plating of substantially the same thickness as stated in the specifications of defendant's patent. Furthermore, witness Brenneke testified that during the World War II period chrome-plated piston rings were produced by Sealed Power Corporation, Muskegon Piston Ring Company, American Hammer Company, Koppers Corporation, and U. S. Hammered Piston Ring Company. In summary, it clearly appears that the plating of piston rings with chromium of the desired thickness, to increase the usable life of the ring by reducing wear, was well known and in actual practice long before the application for the patent in suit.

Chrome plating of piston rings is accomplished by first cleaning the surface to be plated in any appropriate manner as, for example, by an acid or alkali dip, and then placing the part as a cathode in an electrolytic cell containing a chromium electrolyte, whereby the surface of the part to be plated is covered with electro-deposited chromium. The testimony established that in the electroplating process it is impossible to get a uniform thickness of chrome, and that there will be variance in the thickness of the plating on a single ring and variance in the thickness on different rings. The testimony indicates that the general practice of manufacturers of piston rings was to put on as thick a layer of chrome as was desired and as was practicable from a cost standpoint, and in this connection it should be kept in mind that the claims of the patent in suit provide no thickness or range of thickness of chrome plating. Inventor Phillips testified: "You generally put on as much chrome as you felt was practicable to do from a cost standpoint."

■■ The defendant's patent in suit is presumed to be valid, 35 U.S.C.A. § 282; but that presumption of validity is

---

3. The evidence relative to the war-production piston rings was properly admissible.

rebuttable, and in the present case plaintiff cites prior publications and prior uses which were not cited and apparently not considered by the examiner. There is no presumption of validity over pertinent features of the prior art which the examiner did not consider. O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, 664, certiorari denied 326 U.S. 773, 66 S.Ct. 232, 90 L.Ed. 467; Belden v. Air Control Products, D.C., 144 F.Supp. 248, 253, affirmed, 6 Cir., 249 F.2d 460; Kawneer Co. v. Pittsburgh Plate Glass Co., D.C., 109 F.Supp. 228, 232. Furthermore, 35 U.S.C.A. § 112, provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

In considering the requirements of the above statute it should be noted that the specifications and claims of the patent in suit use many vague and indefinite descriptive terms such as "effectual oil control," "relatively very narrow hairline contact," "relatively close seating," "relatively high unit of pressure," "effective sealing for increased piston pressure," "relatively large oil pockets," and "facilitating increased lubrication." The use of these indefinite descriptive terms raises serious question as to the validity of the patent in suit because of indefiniteness, incompleteness, and ambiguity. In considering similar indefinite descriptive terms in Phillips patent 2,148,997 held invalid in Hastings Mfg. Co. v. Automotive Parts Corporation, supra, 39 F.Supp. at page 327, Judge Raymond said: "The Phillips patent is invalid for indefinite-

ness, incompleteness and ambiguity, under the provisions of R.S. 4888. See The Incandescent Light Patent, 159 U.S. 465, 16 S.Ct. 75, 40 L.Ed. 221; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 368, 58 S.Ct. 899, 82 L.Ed. 1402." See also Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 58, 573, 59 S.Ct. 8, 13, 83 L.Ed. 34; Refrigeration Patents Corp. v. Stewart-Warner Corp., 7 Cir., 159 F.2d 972, certiorari denied 331 U.S. 834, 67 S.Ct. 1515, 91 L.Ed. 1847; Therm-O-Proof Insulation Co. v. Slayter & Co., 7 Cir., 80 F.2d 557.

Phillips, the patentee of the patent in suit, is presumed to have known, and is chargeable with knowledge of, everything disclosed by the prior art and publications in the piston-ring field, and of all devices in that field which have been in prior public use. Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422, 424. Long prior to the application for the patent in suit the chrome plating of piston rings was shown in the Fink patent issued in 1934, and was known and described by inventor Phillips in his prior patents and was shown in piston rings manufactured and sold by Simplex Products Corporation, by plaintiff Perfect Circle, and other manufacturers, and was shown in public advertisements. The defendant's patent in suit comprises an aggregation of old and well-known parts or elements which do not cooperate to produce a new, unobvious, and unexpected result and, therefore, do not constitute patentable invention within the meaning of the patent law. If invention is absent, mere utility and novelty are not alone sufficient to sustain the validity of a combination, improvement patent such as that involved in the present case. The Supreme Court has directed that combination patents be scrutinized with the care proportionate to the difficulty and improbability of finding invention in an assembly of old elements. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 150, 152, 71 S.Ct. 127, 95 L.Ed. 162; Hunter Douglas Corporation v. Lando Products, 9 Cir., 215 F.2d 372. In Buffalo-Springfield

Roller Co. v. Galion Iron Works Mfg. Co., 6 Cir., 215 F.2d 686, 687, the court stated: "The patent law requires not only that the subject-matter of a patent must possess novelty and utility but must also demonstrate an exercise of the inventive faculty. Seymour v. Ford Motor Co., 6 Cir., 44 F.2d 306."

See also Gratiot v. Farr Company, 9 Cir., 237 F.2d 940; Powder Power Tool Corporation v. Powder Actuated Tool Company, 7 Cir., 230 F.2d 409; Anderson v. Phoenix Products Company, 7 Cir., 226 F.2d 191; General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 917, 918; Belden v. Air Control Products, supra, 144 F.Supp. at pages 253–255, and authorities cited.

The improvement of one element or part in a combination of old elements or parts does not entitle a patentee to a monopoly on the entire combination. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. A patent should not be granted for the discovery of a result which would flow naturally from the teachings of the prior art. Application of Paul, 252 F.2d 306, 309, 45 C.C.P.A., Patents, ——. The extended application or the carrying forward of an earlier idea or conception of another involving a change in form, material, proportion or degree where the same work is performed in substantially the same way by substantially the same means although with better results, does not constitute invention. Mere advance in efficiency and utility is not sufficient to convert a noninventive aggregation of old elements and parts into a patentable combination. The transposition, integration or reallocation of old elements or parts does not amount to invention. Minor differences in design and construction of a patented device over the prior art, involving no new principles and accomplishing nothing more than one skilled in the art could readily discern, do not amount to invention. Buffalo-Springfield Roller Co. v. Galion Iron Works Mfg. Co., supra, 215 F.2d at page 687; Kwikset Locks, Inc., v. Hillgren, 9 Cir., 210 F.2d 483; General Motors Corp. v. Estate Stove Co., supra, 203 F.2d at pages 917, 918; H. W. Gossard Co. v. Loeber's, Inc., 7 Cir., 114 F.2d 166, certiorari denied 312 U.S. 680, 61 S.Ct. 450, 85 L.Ed. 1119; Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., 7 Cir., 111 F.2d 880; General Machinery Corporation v. Clearing Mach. Corporation, 7 Cir., 104 F.2d 553; L. M. Leathers' Sons v. Goldman, 6 Cir., 252 F.2d 188, 191.

In considering claims for patentability for a combination of old elements in a crowded and well-developed field, the court said in Shaffer v. Armer, 10 Cir., 184 F.2d 303, 307:

"To make sure that a monopoly is not granted for mere perfection of workmanship, the courts closely scrutinize claims to combinations for improvements in a crowded art. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 10, 67 S.Ct. 6, 91 L.Ed. 3."

See also Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 198 F.2d 416; Hollywood-Maxwell Co. v. Street's of Tulsa, 10 Cir., 183 F.2d 261.

In Hazeltine Corporation v. General Motors Corporation, 3 Cir., 131 F.2d 34, 39, 40, the court held that the ingenious application of known principles to a known problem by the use of devices already known and understood to produce a predictable result does not amount to invention. See also Slayter & Co. v. Stebbins-Anderson Co., Inc., 4 Cir., 117 F.2d 848; Utah Radio Products Co. v. General Motors Corporation, 2 Cir., 106 F.2d 5; Kellogg Switchboard & Supply Co. v. Michigan Bell Telephone Co., 6 Cir., 99 F.2d 203, certiorari denied 308 U.S. 582, 60 S.Ct. 104, 84 L.Ed. 487; Perfect Circle Co. v. Hastings Mfg. Co., 6 Cir., 88 F.2d 813.

In Baum v. Jones & Laughlin Supply Co., 10 Cir., 233 F.2d 865, 870, the court said:

"In Hutchinson Mfg. Co. v. Mayrath, supra [10 Cir.], 192 F.2d [110] at page 113, it is said that 'where a patentee brings together old elements in a mechanism, involving no new principle, to produce an old result, although he produces a machine that is more efficient and hence more useful in the art, it is still the product of mechanical skill and not of invention.' Smith v. Hall, 301 U.S. 216, 232, 57 S.Ct. 711, 81 L.Ed. 1049; Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005."

■ As hereinbefore stated, the piston ring described in the patent in suit, except for chrome plating, is essentially the same as the ring described in Phillips 2,148,997, which was held invalid in the prior litigation between the same parties. The mere addition of the element of chrome plating, which had long been known and in practice in the piston-ring art, certainly did not create patentability.

■ The defendant's chrome-plated piston ring described in its patent has achieved some commercial success, but in the absence of invention commercial success alone will not entitle it to a patent monopoly on the combination of old elements or parts. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; L. M. Leathers' Sons v. Goldman, 6 Cir., 252 F.2d 188; Container Corporation of America v. M. C. S. Corporation, 9 Cir., 250 F.2d 707, 709.

To hold with the defendant's contention that the improvement patent in suit is valid would in effect grant defendant a monopoly on all piston rings embodying the element of chrome plating on the surface of the side rails contacting the cylinder walls. Defendant's patent adds little, if anything, to the total stock of knowledge in the field of piston rings for internal-combustion engines, and it does not represent invention within the meaning of the patent law.

■ For the reasons herein stated the court concludes that all claims of the defendant's patent in suit No. 2,565,042 are invalid because of prior-art anticipation, prior disclosure of all elements and parts, and because of lack of invention. The question of infringement by the plaintiff does not arise, as an invalid patent cannot be infringed. A judgment will be entered determining all claims of defendant's patent in suit No. 2,565,042 to be invalid. The plaintiff may recover court costs, but as a good-faith controversy is involved, costs of suit and attorney fees will not be allowed.

■ As the foregoing opinion sets forth the court's findings of fact and conclusions of law, separate findings and conclusions are not necessary. Rule 52(a), Federal Rules of Civil Procedure as amended, 28 U.S.C.A.; Western Pac. R. R. Corp. v. Western Pac. R. R. Co., 9 Cir., 197 F.2d 994, 1005; Belden v. Air Control Products, supra, 144 F.Supp. 248.